857 P.2d 1291

**STATE of Arizona, Appellee,**

v.

**Gregory Allan BALTZELL, Appellant.**

**No. 1 CA–CR 91–0173.**

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 15, 1992.

Review Denied Sept. 21, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Linda Knowles, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Deputy Public Defender, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

On a day in January 1990, the defendant was drag racing, cut in front of another vehicle, lost control of his car, crossed the center line and collided with a car driven by the victim. The victim died. The defendant was charged with second-degree murder and reckless endangerment, and the jury found him guilty of negligent homicide and reckless endangerment. He appealed, and we affirm.

## RESTITUTION

The defendant contests the propriety of the restitution order. He was ordered to pay for the victim's funeral expenses, for travel expenses for the deceased victim's daughter and her husband to come to Arizona from New Jersey, for lost wages for the victim's daughter and her husband, presumably while they were in Arizona and away from their work, and for attorney's fees incurred in closing the victim's estate.

At the sentencing, the defendant's attorney said that he agreed that the defendant owed restitution for funeral expenses, but he was not sure about the "lawyers' fees and things like that." The defendant now argues that the court exceeded its authority in ordering restitution for travel expenses for the family, lost wages, and attorney's fees.

The state contends that defense counsel's comment about restitution was too vague to preserve an objection to the court's order. In counterargument, the defendant

relies on *State v. Reese,* 124 Ariz. 212, 603 P.2d 104 (App.1979), and claims that his explicit approval of restitution for funeral expenses was an implicit objection to the remaining items.

Defense counsel's statement did not preserve the objection. The defendant reads too much into *Reese.* In that case, the defendant objected to having to pay any restitution at all for losses related to crimes for which he was not convicted and which he did not admit committing. This court held that he did not waive his objection just because he did not challenge the actual *amount* of restitution assessed. *Id.* Approval of part of an assessment is not the same thing as a categorical objection to any assessment. Partial approval of restitution does not bring home to the judge that there is an objection to the remainder, and it does not advise the judge of the basis for the objection. Moreover, here, defense counsel did not say that the order was improper; he simply observed that he did not know whether it was proper or not. Since the defendant failed to object to the travel expenses and lost wages, he has waived all but fundamental error with respect to them. *State v. Gendron,* 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991).

We turn to whether it was fundamental error to award restitution for these items. Arizona Revised Statutes § 13–603(C) provides that a convicted person shall make restitution to the victim, or if the victim has died, to the victim's immediate family, in the full amount of the economic loss suffered. "Economic loss" means any loss, including lost earnings, that would not have occurred but for the offense. "Economic loss" does not include consequential damages. Ariz.Rev.Stat.Ann. § 13–105(11).

■ Under some circumstances it may be error to allow travel expenses to the family of a victim. *See State v. Wideman,* 165 Ariz. 364, 369, 798 P.2d 1373, 1378 (App.1990) (improper to award travel expenses when appearance of victim's family at court proceedings was voluntary). The defendant did not request a restitution hearing and the record in this case is not very well developed. The presentence report, however, says that the victim's daughter had to travel to Arizona to close the victim's affairs and to sell the victim's home. The record is silent as to whether it was necessary for the victim's daughter to have the assistance of her husband for this purpose. In our opinion, it was not error, much less fundamental error, to award travel and lost wages to the victim's daughter who was required to come to Arizona to settle her mother's affairs. Because the record is so sketchy concerning the expenses of the daughter's husband, we cannot say that it was fundamental error to allow restitution for the daughter's husband's lost wages and travel expenses.

We next consider whether it was error to award restitution for attorney's fees incurred in settling the victim's estate in New Jersey. The defendant did object to this award. There was evidence that it was customary in New Jersey to retain an attorney to do the type of work that was necessary in this case. We have found only one case dealing with restitution for attorney's fees incurred by victims. *See Arling v. State,* 559 So.2d 1274 (Fla.App. 1990) (restitution allowed for attorney's fees victim paid to recover stolen property in interpleader action).

■ The statute mandating recovery for economic loss is quite broad, and we have allowed restitution for a wide variety of expenses caused by the conduct of persons convicted of crimes. *See Wideman,* 165 Ariz. at 369, 798 P.2d at 1378 (restitution allowed for costs of mental health counseling for the family of a murder victim allowed); *State v. Brady,* 169 Ariz. 447, 819 P.2d 1033 (App.1991) (restitution allowed for costs of moving to restore victim's mental health); *State v. Morris,* 173 Ariz. 14, 839 P.2d 434 (App.1992) (restitution allowed for rental cars, taxi fare, and calls to insurance company in case where victim's car had been damaged). We believe that customary and reasonable attorney's fees incurred to close the victim's estate should be allowed.

## THE JUDGE'S COMMENT

The next issue the defendant raises concerns a comment the judge made to the jury in ruling on the prosecutor's request to recross-examine the defendant. An overview of the conflicting evidence is helpful to an understanding of both this issue and the final issue which the defendant has raised.

The state and the defendant gave different versions of the events leading up to the accident. The state presented evidence that the defendant and the driver of a second vehicle were revving their engines at a red light in preparation for a drag race; that, when the light turned green, both drivers accelerated rapidly, reaching speeds in excess of 85 miles per hour; that, in order to avoid hitting a third vehicle on which defendant was rapidly advancing, he made an unsafe lane change in front of the second driver; and that, as a result of the unsafe lane change and excessive speed, the defendant lost control of his vehicle, resulting in the accident.

The defendant's version was that the driver of the second vehicle tried to goad the defendant into drag racing by pulling up to him at successive red lights, revving his engine, then matching whatever speed the defendant drove. The defendant testified that he accelerated normally, reaching a speed of 40 to 60 miles per hour as he approached the slower moving third vehicle. He testified that he saw an opportunity to change lanes in front of the second vehicle and that he did not know why he lost control of his car.

While the defendant was testifying on redirect examination, his lawyer alluded to the fact that the person with whom he had allegedly been drag racing had not been called as a witness. The prosecutor sought permission to recross-examine the defendant, arguing that he wanted to explore why the person had not been called to testify. The judge denied the request and explained to the jury:

> Members of the jury, at the end of the case I will be instructing you that whether this other gentleman is brought to trial or appears as a witness or doesn't appear as a witness, none of that is relevant to this case. The only person that is on trial is this gentleman here and everything about the other gentleman does not make one bit of difference for your decision in this particular case. So that area is not relevant and we won't go into that.

■ The defendant characterizes this statement as a comment on the evidence, citing Ariz.Const. art. VI, § 27 and *State v. Hopkins*, 108 Ariz. 210, 495 P.2d 440 (1972). Generally, a trial court may instruct a jury on the limited use of evidence without violating the constitutional prohibition against commenting on the evidence. *See State v. Spinks*, 156 Ariz. 355, 361, 752 P.2d 8, 14 (App.1988). It is only when a judge expresses his opinion about the evidence that the prohibition is implicated. *See Hopkins*, 108 Ariz. at 211, 495 P.2d at 441 (1972).

■ Part of the judge's instruction could have been interpreted as a comment to the effect that any testimony about the defendant's interaction with the second driver was immaterial. This, of course, was not correct. However, when taken in the context of how the issue arose, and in light of the subsequent handling of the issue, we do not believe that the judge's comments misled the jury. First, the defense helped create the problem by commenting on the other driver's absence. All parties knew that the other driver was being prosecuted and in all likelihood would refuse to testify. Second, the comment that had the potential to confuse was only a part of the judge's entire statement, the gist of which was to instruct the jury not to consider the other driver's absence. The judge's comment was further set in context by a curative instruction he gave the jury at the end of the trial, telling them not to speculate on the absence from trial of any other person. Third, and most important, defendant's counsel was allowed complete freedom to argue the effect of the other driver's action on the defendant's conduct.

## ADMISSION OF EXPERT TESTIMONY AND PHOTOGRAPHS

■ The final issue the defendant raises concerns whether certain evidence was properly admitted. Without objection, Detective John K. O'Hair–Schattenberg, an accident investigator, testified that it was his opinion that the defendant was travelling between 85 and 99 miles per hour just prior to impact with the victim's vehicle. Over a defense objection, the trial court also allowed the detective to provide estimates of the defendant's speed based on "occupant kinematics," which the detective described as the study of the position of objects and bodies in the dynamics of accidents. Based on the extent of damage to the victim and to the seat in which she had been sitting, the detective concluded that the defendant's speed was consistent with the prosecution's estimate of 85 to 100 miles per hour and inconsistent with the defendant's estimate of 40 to 60 miles per hour. Also over defense objection, the court admitted two photographs of the victim's car, with the victim still inside.

The defendant asserts that the detective's testimony was inadmissible because the state failed to demonstrate that "occupant kinematics" is sufficiently established to have gained general scientific acceptance as required by *Frye v. United States,* 293 F. 1013 (D.C.1923). Whether the evidence was offered as "scientific fact," which is the subject of *Frye,* is doubtful. We see it more as a framework for the detective's opinions. Even if the state was required to meet the *Frye* test, the uncontroverted testimony of Detective O'Hair–Schattenberg was arguably sufficient foundation to sustain the admission of the evidence. We need not belabor the point, however, because the investigator testified without objection to the speed of the defendant's vehicle based on other recognized accident techniques.

The photographs were also properly admitted as demonstrating and explaining the basis of the investigator's opinion. *See*

*State v. Dickson,* 143 Ariz. 200, 203–04, 693 P.2d 337, 340–41 (1985). We have reviewed the photographs, and they are not gruesome.

We affirm the convictions and sentences imposed.

LANKFORD, P.J., and O'MELIA, J.*, concur.