909 P.2d 502

CITY OF PHOENIX, a political subdivision of the State of Arizona, and Pierson Construction Corporation, an Arizona corporation, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA, the Honorable Elizabeth Stover, a judge thereof, Respondent Judge,

KLEVEN CONSTRUCTION, INC., an Arizona corporation, Real Party in Interest.

No. 1–CA–SA 95–0256.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 21, 1995.

As Corrected Jan. 8, 1996.

Tiffany & Hoffman, P.A. by William J. Simon, Phoenix, for Plaintiff–Respondent–Real Party in Interest Kleven Construction, Inc.

Jennings & Haug by D. Kim Lough, Stacey A. Dowdell, Phoenix, for Defendant–Petitioner Pierson Construction Corporation.

Roderick G. McDougall, Phoenix City Attorney by Ben P. Marshall, Assistant City Attorney, Phoenix, for Defendant–Petitioner City of Phoenix.

## OPINION

LANKFORD, Judge.

This is a special action from a decision of the superior court granting relief in a special action. By order, we previously accepted jurisdiction and granted relief. This opinion explains the reasons for our order.

This case concerns the qualifications of a contractor to bid on a City of Phoenix construction project. The issue is whether the contractor was qualified to bid when it held only a Class A contractor's license at the

time it bid, and it obtained the required Class B license after it submitted a bid but before the contract was awarded. Resolution of this issue turns on whether the substantial compliance doctrine applies in this situation. The superior court granted relief on a competitor's petition for special action and directed the City of Phoenix to reject the contractor's bid.

We accepted jurisdiction because the imminence of the contract award rendered the remedy of appeal inadequate and because the issue is one of importance to the construction industry in this state.

The facts are as follows. The petitioner, Pierson Construction Corporation, submitted the low bid to the City of Phoenix for work involving water line and service replacement. Real party in interest Kleven Construction, Inc., was the next low bidder.

At the time of its bid, Pierson held a Class A general engineering license. *See* Ariz.Rev. Stat.Ann. ("A.R.S.") § 32–1102(2). After submission of bids, but before the award of the contract, the Registrar of Contractors opined—apparently for the first time—that a Class B residential and commercial license is required for some portions of the work involved in this project.[1] Soon thereafter, Pierson applied for and received both a Class B residential and a Class B–01 commercial license.[2]

Before the contract was awarded, however, Kleven filed a protest with the city urging that Pierson was unqualified because it possessed only the Class A license at the time it bid. After the city rejected the protest, Kleven filed a petition for special action with the superior court. The superior court granted relief and barred the city from accepting Pierson's bid.

We hold that Pierson is qualified because it substantially complied with the contractor licensing statutes. We first examine what the statutes required of Pierson, and then

analyze Pierson's compliance with those requirements.

The controlling statute is A.R.S. section 32–1151, which provides:

> It is unlawful for a person ... to engage in the business, act or offer to act in the capacity, or purport to have the capacity of contractor without having his own license in good standing in his own name therefor as provided in this chapter, unless the person ... is exempt as provided in this chapter ....

This statute bars anyone from bidding on a contract—"offer[ing] to act in the capacity ... of contractor"—without a license. *Urbatec v. Yuma County,* 614 F.2d 1216 (9th Cir.1980), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 49 (1980). This statute also requires a bidder to have all licenses required for the entire project at the time it submits a bid. Thus, being licensed for other types of work, or only for portions of the work on a project, does not qualify a person to bid on or perform work for which he is unlicensed. In light of important distinctions among the various types of licenses, *see City of Phoenix v. Superior Court,* 109 Ariz. 533, 536–37, 514 P.2d 454, 457–58 (1973), this interpretation best comports with the purpose of licensing statutes "to provide protection for the public that contractors have the requisite skill and ability to perform the required work." *Id.* at 537, 514 P.2d at 458. In addition, the parties agree that Pierson needed a Class B license to be eligible to perform this particular project. We hold that Pierson was not in complete compliance with section 32–1151 when it submitted its bid.

We now consider whether the doctrine of substantial compliance nevertheless makes Pierson a qualified bidder. Of special import is our supreme court's recent decision in *Aesthetic Property Maintenance, Inc. v. Capitol Indem.,* 183 Ariz. 74, 900 P.2d 1210

---

1. The Registrar of Contractors has the responsibility of adopting rules and regulations necessary to classify contractors, and it may limit the contractors' field and scope of operations. A.R.S. § 32–1105; *City of Phoenix v. Superior Court,* 109 Ariz. 533, 536, 514 P.2d 454, 457 (1973).

2. See Ariz.Admin.Code ("A.A.C.") tit. 4, ch. 9, R4–9–102(B) for the scope of a Class A General Engineering license and a Class B–01 General Commercial Contractor license. See A.A.C. tit. 4, ch. 9, R4–9–103 for the scope of work that may be performed with a Class B General Building Contractor license.

(1995). The court held that substantial compliance with the contractor licensing statute satisfied the licensing prerequisite to filing a civil action, a requirement found in A.R.S. section 32–1153. *Id.* at 77, 900 P.2d at 1213.

In *Aesthetic,* the contractor's license was suspended by operation of law when it inadvertently failed to renew the license. It completed a subcontract while suspended, and entered into another subcontract before it had the license reinstated. *Id.* at 75–76, 900 P.2d at 1211–12. The supreme court held that the contractor nevertheless could sue the general contractor and a surety for payment on both projects. The court said: "We have repeatedly held that the purpose of § 32–1153 is to protect the public from unscrupulous, unqualified, and financially irresponsible contractors." *Id.* at 76, 900 P.2d at 1212. "[S]ubstantial compliance is adequate when it satisfies the general policy or purpose of the statute." *Id.* at 77, 900 P.2d at 1213.

■ The court then applied several factors to determine whether the subcontractor had substantially complied:

Did the Registrar's failure contribute to noncompliance?

... Was the contractor financially responsible while its license was suspended?

...

Did the contractor knowingly ignore the registration requirements? ... Did the contractor, immediately upon learning of the license suspension or other statutory noncompliance, apply to reactivate the license or remedy the statutory violation? ... Finally, did the failure to comply with our statute prejudice the party the statute seeks to protect?

*Id.* at 77, 900 P.2d at 1213.

*Aesthetic* establishes that substantial compliance can be adequate under section 32–1153. Two questions remain: First, does the doctrine of substantial compliance also apply to section 32–1151? Second, are the factors that establish substantial compliance present in this case? We answer both questions in the affirmative.

■ Substantial compliance applies to section 32–1151 because the purpose of that provision is the same as the purpose of section 32–1153: to protect the public from unscrupulous, unqualified and financially irresponsible contractors. 183 Ariz. at 76, 900 P.2d at 1212. In fact, both provisions are simply methods of deterring unlicensed persons from contracting. Section 1153 accomplishes this by prohibiting such persons from suing for payment on a contract. Section 1151 does so by forbidding unlicensed persons from offering to contract, a ban enforced by punishment as a misdemeanor under section 32–1164(A)(2). If the circumstances reveal that the protective purpose of these statutes is satisfied, then substantial compliance suffices.

■ Applying the factors enumerated in *Aesthetic* affirms that Pierson's compliance with the licensing statutes was substantial. Pierson at all times possessed a Class A license. No suggestion is made that at any time it had failed to maintain financial responsibility. Pierson had failed to comply with Section 1151 by holding a Class B license only because a Class B license had not been thought necessary before the Registrar's contrary opinion. That opinion was rendered only after Pierson had submitted its bid. When Pierson discovered the omission, it promptly obtained the necessary license. Finally, the City of Phoenix is not prejudiced by Pierson's temporary failure to fully comply. In fact, just the opposite is true: If Pierson is disqualified, the city must pay more for the work because Pierson was the low bidder.

Accordingly, we hold that Pierson substantially complied with the contractor's licensing statute. For that reason, we grant the relief that Pierson requests and vacate the superior court's order.

GARBARINO, P.J., and SULT, J., concur.