10 P.3d 634

**STATE of Arizona, Petitioner,**

**v.**

**The Honorable Michael O. WILKINSON, Judge of the Superior Court of The State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**John R. Porter, Real Party in Interest.**

**No. 1 CA–SA 00–0054.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 12, 2000.

As Amended Sept. 13, 2000.

Review Granted Feb. 13, 2001.

---

Roderick G. McDougall, Phoenix City Prosecutor By Bianca E. Bentzin, Assistant City Prosecutor, Phoenix, Attorneys for Petitioner.

Hurley & Mahowald By Michael E. Hurley, Phoenix, Attorneys for Real Party in Interest.

## OPINION

FIDEL, Judge.

¶ 1 It is a class one misdemeanor in Arizona to act as a residential contractor without a license. *See* A.R.S. § 32–1151 (1996). This special action presents the question whether an unlicensed contractor convicted of that crime may be required, by order of restitution, to reimburse a contracting homeowner for the economic damages that the homeowner suffered from the contractor's incomplete and faulty work.

### I. HISTORY

¶ 2 In February 1996, Defendant John R. Porter represented himself as a licensed con-

tractor to homeowner T.S.; the following month he did so to homeowner N.L. With each, Porter entered a contract and accepted payment to perform residential remodeling; with each, he left the project uncompleted and failed to repair defective work. Both homeowners complained to the Arizona Registrar of Contractors, whose investigation revealed that Porter lacked a contractor's license.

¶ 3 For his separate acts with respect to T.S. and N.L., Porter was charged with two separate counts of contracting without a license, class one misdemeanors that violate A.R.S. § 32–1151. In the N.L. matter, Porter was additionally charged with advertising to provide contracting services without first obtaining a contractor's license, a class one misdemeanor that violates A.R.S. § 32–1165 (1994). Porter consented to the submission of all three counts for determination by the municipal court upon the investigative reports prepared by the Registrar of Contractors. The municipal court, finding Porter guilty as charged, conducted a restitution hearing, considered testimony by T.S. and N.L., imposed fines within the statutory range, and ordered Porter to pay restitution of $22,429 to T.S. and $22,365 to N.L.

¶ 4 In a timely appeal to the superior court pursuant to A.R.S. §§ 22–371 and ' –425 (1999), Porter argued that the municipal court had improperly ordered restitution for losses not attributable to his criminal offenses. The superior court agreed; setting aside the restitution orders, it stated, "The shoddy and incomplete work done by the appellant was the cause of [the victims'] losses, [not] his failure to procure a license."

## II. JURISDICTION

¶ 5 Because the superior court rendered its judgment on appeal from the municipal court, the State has no direct avenue of appeal. See A.R.S. § 22–375 (1994) (limiting further appeal from a superior court judgment on appeal from the municipal court to questions of validity of a tax, impost, assessment, toll, municipal fine, or statute). The State thus brings this special action, arguing that the question whether restitution is available to the victims of unlicensed resi-

dential contractors is one appropriate for our discretionary review. We accept jurisdiction because the State lacks any remedy by appeal and because the question presented is one of law, one of first impression, and one upon which lower courts, lacking appellate guidance, have rendered inconsistent judgments.

¶ 6 The State does not contend that Porter's conviction for advertising to provide contracting services without first obtaining a contractor's license provides a proper basis for an order of restitution. The State confines its argument in favor of restitution to Porter's two convictions for contracting without a license. As the State confines its argument, so do we confine our disposition.

## III. RESTITUTIONARY NEXUS

¶ 7 In sentencing a criminal offender, an Arizona court must order restitution to any victim who has suffered "economic loss" that "would not have been incurred but for the offense." See A.R.S. §§ 13–603(C), 13–105(14) (1999). Pure "but for causation" does not suffice, however, for losses so remote or indirect as to be categorized as "consequential damages" are not recoverable. See § 13–105(14); State v. Morris, 173 Ariz. 14, 18, 839 P.2d 434, 438 (App.1992). In Morris we elaborated on the causal nexus that distinguishes recoverable from non-recoverable losses, holding that restitution may be ordered when actual damages are a "direct result," or natural and foreseeable consequence, of a defendant's conduct, taking "the nature and character of the criminal activity" into account. Id. at 18, 839 P.2d at 438.

¶ 8 The superior court, finding no direct causal nexus between Porter's crime and the homeowners' damages, analogized this case to State ex rel. McDougall v. Superior Court, 186 Ariz. 218, 920 P.2d 784 (App.1996). In McDougall, we held that a conviction for leaving the scene of an injury accident did not support an order of restitution to the victims of the accident. The victims' injuries, we stated, neither resulted from nor were aggravated by the criminal act of leaving the scene. Id. at 220, 920 P.2d at 786. "Both the constitution and statutes [of Arizona] re-

quire restitution only where the injury is caused by the *criminal conduct* for which defendant was convicted." *Id.*

■ ¶ 9 This case is far closer than *McDougall.* The statute that makes it a crime to leave the scene of an injury accident, A.R.S. § 28–661 (1998), serves to enable accident victims and investigating authorities to identify a knowledgeable and potentially responsible party in the event of future civil or criminal proceedings. *See State v. Rodgers,* 184 Ariz. 378, 380, 909 P.2d 445, 447 (App.1995). The injuries sustained in traffic accidents are not results within the statute's intended preventive scope. In contrast, the losses sustained by T.S. and N.L., Porter's victims in this case, do fall within the intended preventive scope of the statute that makes it a crime to engage in contracting without a license. The purpose of that statute, and of the cluster of licensing statutes that underlie it, is to protect the members of the public from "unscrupulous, unqualified, and financially irresponsible contractors." *Aesthetic Property Maintenance, Inc. v. Capitol Indem. Corp.,* 183 Ariz. 74, 77, 900 P.2d 1210, 1213 (1995); *City of Phoenix v. Superior Court,* 184 Ariz. 435, 438, 909 P.2d 502, 505 (App. 1995).

¶ 10 Despite these distinguishing factors, the question remains whether the victims' losses in this case were *directly* caused by Porter's criminal conduct or whether the losses are so dependent on other factors that they constitute indirect damages too remote to be susceptible to restitution. The State advances alternative characterizations of the victims' losses. We will examine each in turn.

### A. Cost of Completing and Correcting Defective Work

■ ¶ 11 The losses that the municipal court assessed were the costs to complete and correct the work that Porter had incompletely and poorly done. These losses, the State contends, were directly caused by Porter's criminal conduct. We disagree.

¶ 12 As the superior court correctly observed, if Porter, though unlicensed, had per-

formed his contracts capably, T.S. and N.L. would have sustained no loss. That Porter lacked a license did not cause their losses; his unworkmanlike performance caused their losses. Yet unworkmanlike performance is not an element of the criminal conduct for which Porter was convicted. An unlicensed contractor who performed his contract capably—indeed, flawlessly—would be no less guilty of violating § 32–1165 than one who incompetently performed.

¶ 13 Consider too that homeowners sometimes *choose* to hire unlicensed contractors, foregoing the protection of the licensing statutes in order to secure a lower price. When a person knowingly hires an unlicensed contractor and later suffers economic loss from unworkmanlike performance, we would not say that the contractor caused their losses by acting without a license. An element of misrepresentation, or at minimum, nondisclosure, seems necessary to make absence of a license an agent of harm. *Cf. People v. Hays,* 234 Cal.App.3d Supp. 22, 286 Cal.Rptr. 462, 465 (1991) (limiting restitution to parties who do not know their contractor lacks a license, reasoning that one who knowingly contracts with an unlicensed contractor is not a victim of the contractor's crime). Yet neither misrepresentation nor nondisclosure is an element of the criminal conduct for which Porter was convicted. An unlicensed contractor who revealed his status to his client—indeed, one who did so in writing—would be no less guilty of the misdemeanor of violating § 32–1165 than one who affirmatively misrepresented the status of his license.

¶ 14 In short, unworkmanlike performance is a direct and necessary element of causation in cases of this nature, as is misrepresentation or nondisclosure. Yet neither is an element of the crime. In contrast, unlicensed status is not an element of causation, but is an essential element of the crime.

### B. Loss of Access to Registrar's Remedial Machinery

■ ¶ 15 These same extra-statutory factors—unworkmanlike performance and nondisclosure—take center stage as causal agents when we consider the State's alternative characterization of the victims' economic

loss. The State points out that the licensing statutes provide remedial machinery through the auspices of the Registrar of Contractors to the victims of unsuitable work, entitling them to seek repair orders and to draw up to $20,000 from a recovery fund to cover damages resulting from conditions that a licensed contractor does not repair. *See* A.R.S. §§ 32–1132 (1994) and 32–1131(4) (1999). But access to such remedies is limited to those who have contracted with licensed contractors. *See id.* Thus, the State contends, Porter's act of contracting without a license *did* cause economic harm by depriving his victims of access to the recovery fund and the rest of the remedial machinery administered by the Registrar. *Cf. People v. Milne,* 690 P.2d 829, 836 (Colo.1984) (failure to obtain a securities license causes damages susceptible to restitution, for it "deprives the public of the minimum level of protection required ... [of] those who sell securities").

¶ 16 This form of loss, however, also depends on unworkmanlike performance and nondisclosure of unlicensed status. That is, without unworkmanlike performance, there would be nothing to remedy, and the loss of access to the Registrar's remedial machinery would have no economic consequence. And even in a case of unworkmanlike performance, we would not say that a contractor's unlicensed status *caused* a homeowner to lose access to the remedies administered by the Registrar if the homeowner had knowingly chosen to employ an unlicensed contractor and deliberately relinquished the right of access to such remedies in order to secure a lower price.

### C. Why These Factors Make A Difference

¶ 17 Our dissenting colleague attributes sufficient nexus between criminal conduct and loss to a chain of "but for" causation: had Porter not acted in the capacity of residential contractor without a license, there would have been no contract; had there been no contract, there would have been no performance; had there been no performance, there would have been no unworkmanlike performance; and had there been no un-

workmanlike performance, there would have been no loss.

¶ 18 This "but for" analysis is debatable, for it traces causation entirely to the fact that Porter acted as a residential contractor and not at all to the fact that he lacked a license. Yet it is the absence of a license alone that makes acting as a residential contractor a crime.

¶ 19 However, even if we assume, for the sake of argument, the presence of "but for" causation in this case, that would not bring us to the end of our analysis. "But for" causation may be necessary to support restitution for a loss. *See* A.R.S. § 13–105(14) ("Economic loss includes ... losses which would not have occurred but for the offense."). However, "but for" causation does not suffice to support restitution, for if it did, restitution would extend to consequential damages. Yet our criminal code expressly provides the contrary. *See id.* ("Economic loss does not include ... consequential damages.")

¶ 20 Although the terms are imprecise, many branches of the law contrast "consequential" and "immediate" damages, "indirect" and "direct" damages, or "remote" and "proximate" damages as a means to convey "that legal responsibility for injuries has a limit." 5 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 998, at 22 (1964); *Cf.* W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 41, at 264 (5th ed. 1984) ("As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability."). Thus our case law has attempted to draw the line of restitution between the direct and indirect results of the criminal conduct for which a defendant has been convicted. *See Morris,* 173 Ariz. at 18, 839 P.2d at 438.

¶ 21 This question of direct or indirect causation provides the context for our discussion of unworkmanlike performance and nondisclosure. We do not discuss unworkmanlike performance and nondisclosure because either is factually doubtful in the record of this particular case, but because both shed light on the question whether, in this *kind* of

case, a homeowner's losses are direct or only indirect results of the contractor's criminal conduct.

¶ 22 To summarize our view, one may act as a residential contractor without a license—the criminal conduct in question—without causing any loss at all. Unlicensed contracting is a victimless crime unless two further elements are added—unworkmanlike performance and misrepresentation or nondisclosure. Neither of these elements of damage causation, however, is an element of the crime. For this reason, we conclude that economic loss is a remote, indirect, or consequential result of unlicensed contracting and not one within the scope of criminal restitution.

## IV. THE BURDEN OF ENFORCEMENT

¶ 23 A victim's right to restitution is constitutionally and statutorily protected in Arizona, but every right has limits. If restitution extended throughout the foreseeable range of but for causation, the administration of restitution would overwhelm the courts. The distinction between direct and indirect losses is important, for it serves to confine restitution within manageable bounds.

¶ 24 This prosecution illustrates the point. Unlicensed contracting is a class one misdemeanor, a petty offense. *See* A.R.S. § 32–1164(A)(2). The maximum fine that a court can impose for any class one misdemeanor is $2500. *See* A.R.S. § 13–802(A). The minimum fine that a court can impose for the specific misdemeanor of contracting without a license is $500 for a first offense and $750 for a second. *See* A.R.S. § 32–1164(B). A court is not limited, in assessing restitution for a misdemeanor, by the amount of the maximum fine. *See State v. Fancher,* 169 Ariz. 266, 268, 818 P.2d 251, 253 (App. 1991). Yet the classification and level of fine embody a legislative judgment of the severity of the crime.

¶ 25 Further, misdemeanors are prosecuted in the justice and municipal courts. *See* A.R.S. §§ 22–301(A)(1), 22–402(B). The justice and municipal courts are our highest volume courts and the most dependent on quick turnover of cases. When economic losses arise from unworkmanlike residential contracting, however, such losses can be substantial; in the present case, they totaled approximately $45,000; in other cases they might well run into hundreds of thousands of dollars. To saddle our limited jurisdiction courts with high stakes restitution hearings involving highly contested, complex issues of workmanship and causation would, in our judgment, exceed the contemplation of the statutes that define the severity of unlicensed contracting as a crime. Indeed, to do so might make unlicensed contracting cases so cumbersome as to discourage their prosecution altogether.

¶ 26 We do not decide that homeowners lack legal recourse for damages caused by the unworkmanlike performance of unlicensed contractors. Through civil causes of action, they may seek to establish and recover whatever losses the contractor may have caused. Such damages, however, are better suited to be determined in civil proceedings and are beyond the restitutionary scope of the statute that makes it a misdemeanor to act as a residential contractor without a license.

¶ 27 For the foregoing reasons, we accept review and deny relief.

CONCURRING: WILLIAM F. GARBARINO, Judge.

RYAN, Judge, Dissenting.

¶ 28 I agree with the majority that the losses sustained by Porter's victims in this case fall within the preventative scope of the contractor licensing statutes. However, in denying restitution to Porter's victims, the majority concludes that the losses suffered by Porter's victims are not sufficiently causally connected to his criminal conduct to support an award. Because I disagree with the majority in this regard, I respectfully dissent.

¶ 29 Under our constitution, crime victims have a constitutional right to prompt restitution. *See* Ariz. Const. art. 2, § 2.1(A)(8). Thus, a court must order a defendant convicted of a criminal offense to pay restitution for the full amount of the economic losses suffered by the victim. *See* Ariz.Rev.Stat.

Ann. ("A.R.S.") § 13–603(C)(Supp.1999). In determining the amount of a restitution award, a court "shall consider all losses caused by the criminal offense or offenses for which the defendant has been convicted." A.R.S. § 13–804(B)(Supp.1999). Although eligible losses do not include consequential damages, *see* A.R.S. § 13–105(14) (Supp. 1999), the restitution statute "is quite broad, and we have allowed restitution for a wide variety of expenses caused by the conduct of persons convicted of crimes." *State v. Baltzell,* 175 Ariz. 437, 439, 857 P.2d 1291, 1293 (App.1992). Therefore, a court must order restitution "for actual damages, that are the natural consequences of the defendant's conduct or when the court determines that the losses were foreseeable, considering the nature and character of defendant's criminal actions." *State v. Morris,* 173 Ariz. 14, 18, 839 P.2d 434, 438 (App.1992).

¶ 30 The majority opines that this case is "far closer" than *State ex. rel McDougall v. Superior Court,* 186 Ariz. 218, 920 P.2d 784 (App.1996). *See ante* at ¶ 9. But, in fact, *McDougall* resembles this case only in that the trial court denied restitution. *See* 186 Ariz. at 219, 920 P.2d at 785. In *McDougall,* as the majority here correctly points out, the defendant's criminal conduct in leaving the scene of a vehicular accident did not cause or aggravate injuries suffered by the accident victims. *See ante* at ¶ 8; 186 Ariz. at 220, 920 P.2d at 786. Consequently, restitution was not proper because the defendant's criminal conduct did not cause the losses for which restitution was sought. *See id.* However, the majority concedes that the losses to "Porter's victims in this case, do fall within the intended preventive scope of the statute." *Ante* at ¶ 9. Thus, in my view, *McDougall* simply does not apply here.

¶ 31 Nevertheless, the majority reaches the same conclusion as *McDougall*—that restitution is unavailable because, as they see it, Porter's crime did not directly cause his victim's losses. *See ante* at ¶ 11. The majority correctly explains that it was Porter's unworkmanlike performance that actually caused his victims' losses. *See ante* at ¶ 12. Had Porter performed competently, his victims would have no claim for restitution be-

cause they would have suffered no losses. *See id.* "Yet," writes the majority, "unworkmanlike performance is not an element of the criminal conduct for which Porter was convicted." *Id.* They go on to note that homeowners, on occasion, knowingly deal with unlicensed contractors in order to get a better price. The majority thus believes that some element of nondisclosure or misrepresentation as well as unworkmanlike performance must accompany the crime of contracting without a license before restitution can attach. *See ante* at ¶¶ 13–14.

¶ 32 I believe that my colleagues' analysis is flawed. The statutes make it a class 1 misdemeanor to act "in the capacity of a contractor within the meaning of this chapter without a license." A.R.S. § 32–1164(A)(2) (1996); *see* A.R.S. §§ 32–1101 (Supp.1999), 32–1151 (1996). Thus, in this case, Porter committed a crime when he contracted with his victims to perform residential remodeling for compensation and thus acted in the capacity of a contractor without a license. *See* A.R.S. § 32–1101(A)(7). Had Porter not acted in this capacity, there would have been no contract. Had there been no contract, there would have been no incompetent performance and no injury. Therefore, in my opinion, the victims' losses flowed directly from Porter's criminal actions. *See State v. Lindsley,* 191 Ariz. 195, 198, 953 P.2d 1248, 1251 (App.1997) (holding that "the proper focus [for determining restitution] is upon how directly the loss flows from the defendant's acts").

¶ 33 The majority makes too much of the fact that without Porter's unworkmanlike performance his victims would have suffered no losses. They correctly state that an unlicensed contractor commits a crime when he acts in the capacity of a contractor regardless of the quality of his work. *See ante* at ¶ 12; A.R.S. § 32–1165. They also correctly state that, unless the quality of the work is such that the victim suffers a loss, there could be no restitution. But then they reach the unwarranted conclusion that, because unworkmanlike performance is not an element of the crime of contracting without a license, restitution is not available to a person who suffers a loss because of it.

¶ 34 Just because restitution may be unavailable when a criminal act does not cause a loss, it does not follow that restitution is not available when the same criminal act does cause a loss. For example, a burglar may enter a home without breaking a window, but that does not mean that a homeowner cannot claim restitution for window that is damaged during a burglary. Damaging a window is not an element of the crime of burglary, just as unworkmanlike performance is not an element of the crime of contracting without a license, but the victim is still entitled to restitution for the loss. In the same fashion, a victim is entitled to restitution for losses resulting from the crime of contracting without a license even though there may be situations in which the same crime causes no loss.

¶ 35 Similarly, I believe that my colleagues have misunderstood the impact of Porter's misrepresentation or nondisclosure of his unlicensed status. The majority observes that some people choose to deal with unlicensed contractors and, in doing so, give up the protection of the licensing statutes to get a better price. *See ante* at ¶ 13. From this, they conclude that an element of misrepresentation or nondisclosure must accompany the crime of contracting without a license before restitution can attach because, otherwise, the connection between the crime and any loss is too tenuous. *See id.* at ¶¶ 13–14.

¶ 36 The majority's reasoning is flawed because a person who knowingly solicits or facilitates an unlicensed person to act in the capacity of a contractor does not lessen that person's criminal responsibility for any resulting losses, but rather forfeits the right to receive restitution. It is unlawful for a person to knowingly solicit or facilitate the commission of a misdemeanor. *See* A.R.S. § 13–1002 (1989) (solicitation); A.R.S. § 13–1004 (Supp.1999) (facilitation). Thus, a person who knowingly contracts with an unlicensed contractor would be committing a crime. Such a person would not be entitled to restitution because any loss resulting from the unlicensed contractor's work would flow directly from the crime of soliciting or facilitat-

ing that work. *See* A.R.S. § 13–105(14) ("Economic loss does not include losses incurred by the convicted person"). Therefore, Porter's deceptions matter in this case not because of any causation considerations, but because of their impact on his victims' restitution rights.

¶ 37 The purposes underlying the contractor licensing statutes also support an award of restitution in this case. First, a person who contracts with a licensed contractor has reasonable assurances that the work will be completed in a competent manner. To obtain a license, a contractor must meet minimal competency requirements. *See* A.R.S. § 32–1122(F)(1), (2) (Supp.1999). In addition, a person who contracts with a licensed contractor can presume that all work will be done in a workmanlike manner and the work will meet building codes and other objective quality standards.[1] *See* Ariz. Admin. Code R4–9–108 (Supp.98–1) (Arizona Registrar of Contractors workmanship standards). Thus, it is reasonably foreseeable that any work done by an unlicensed contractor would likely be done incompetently. Such foresight is not farfetched given our prior case law with respect to restitution orders. *See, e.g., Lindsley,* 191 Ariz. at 199, 953 P.2d at 1252 (upholding a restitution award for a victim's wages lost by voluntary attendance at court proceedings); *State v. Blanton,* 173 Ariz. 517, 520, 844 P.2d 1167, 1170 (App.1992) (finding no abuse of discretion in awarding restitution to a homicide victim's parents for the headstone, flowers, chapel music, minister's honorarium, and chapel fee); *State v. Brady,* 169 Ariz. 447, 448, 819 P.2d 1033, 1034 (App.1991)(holding that the court may award moving costs as restitution to the victim of a sexual assault); *see also Morris,* 173 Ariz. at 18–19, 839 P.2d at 438–39 (citing *State v. O'Brien,* 459 N.W.2d 131 (Minn.App.1990), in which the court ordered restitution for wedding costs resulting from the defendant's false swearing that a prior marriage had been annulled).

¶ 38 Second, a person who contracts with a licensed contractor is assured that the contractor is financially responsible. In the con-

---

1. Here, one victim learned that Porter had violated city zoning codes, and the other discovered that Porter had not obtained the necessary permits.

text of this case involving residential contracting, a licensed contractor must provide a bond of between $5000 and $15,000 to protect both the property owner and suppliers. *See* A.R.S. §§ 32–1131(3), 32–1152(B)(5), (E) (Supp.1999). In addition, a licensed residential contractor must pay $600 into a recovery fund to compensate a homeowner for losses caused by any violation of the contracting statutes or rules. *See* A.R.S. § 32–1132 (1996).

¶ 39 These basic protections are lost when a person contracts with an unlicensed contractor. The loss of these protections flows directly from the criminal act of contracting without a license. As a result, it is reasonably foreseeable that economic losses such as occurred here are the natural consequences of contracting with an unlicensed contractor. *Cf. Morris,* 173 Ariz. at 18, 839 P.2d at 438. Thus, the nature and character of Porter's criminal act reinforces my belief that there is a sufficient causal nexus between the victims' losses and Porter's contracting without a license to justify a restitution award.

¶ 40 Finally, the award of restitution here serves the purposes of restitution. "The objectives of mandatory restitution are both reparative and rehabilitative." *State v. Freeman,* 174 Ariz. 303, 306, 848 P.2d 882, 885 (App.1993). The municipal court's restitution order serves to make the victims whole and brings home to Porter the seriousness of his offense.[2] To state that the victims have a remedy through a civil lawsuit as the majority does, *see ante* at ¶ 27, is to state the obvious and, in this case, points the victims to an empty remedy. Porter declared bankruptcy naming his victims as creditors. Consequently, the victims could not recover from Porter in a civil suit if his contractual debts to them were discharged. *See* 11 U.S.C. § 524(a)(1) (1994) (a bankruptcy discharge "voids any judgment at any time obtained to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged"). On

the other hand, Porter's bankruptcy would have no effect on a restitution award. *See* 11 U.S.C. § 523(a)(7)(1994); *Kelly v. Robinson,* 479 U.S. 36, 52–53, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

¶ 41 Therefore, I would grant relief and reinstate the municipal court's restitution orders.

---

**2.** I also believe that the majority's opinion is flawed in concluding that allowing restitution in cases such as this would "saddle" the justice and municipal courts with complex restitution hearings. *See ante* at ¶ 25. The municipal court ably handled this hearing; in fact, Porter does not

contest the court's determination of the amount of restitution. Further, the majority's rationale ignores the constitutional and statutory restitution provisions which make no distinctions on the basis of which court decides the case.