129 P.3d 497

**ARIZONA COMMERCIAL DIVING SERVICES, INC., an Arizona corporation, Plaintiff/Appellant,**

v.

**APPLIED DIVING SERVICES, INC., an Arizona corporation; Israel G. Torres, Registrar of Contractors; Arizona Registrar of Contractors, Defendants/Appellees.**

No. 1 CA–CV 05–0082.

Court of Appeals of Arizona, Division 1, Department E.

March 2, 2006.

Review Denied June 30, 2006.

zona Supreme Court Order filed December 6, 2005.

Freeman & St. Clair PLLC, by Norman R. Freeman, II, Tucson, Attorneys for Plaintiff/Appellant Arizona Commercial Diving Services, Inc.

Carmichael & Powell PC, by David J. Sandoval, Attorneys for Defendant/Appellee Applied Diving Services, Inc.

## OPINION

OROZCO, Judge.

¶1 Arizona Commercial Diving Services (ACDS) appeals the judgment in favor of Applied Diving Services, Inc. (ADS) and the Arizona Registrar of Contractors ("the ROC") on ACDS's appeal and ADS's and the ROC's cross-appeals from the decision of the Administrative Law Judge (ALJ). The trial court upheld the ALJ's decision that ACDS did not meet the standards to satisfy the "substantial compliance" exception to the licensing requirement. It reversed the ALJ's decision that the requirements contract at issue was exempt from the licensing requirements because it might be worth less than $750 per year. It further directed the ROC to rescind ACDS's license, and not reissue the license for one year. For the following reasons, we affirm the trial court's decision.

## FACTS AND PROCEDURAL HISTORY

¶2 Kurt Hankes, a former employee of ADS, started a new business, ACDS, in March 2003. Before transacting business, ACDS contacted the ROC regarding licensing requirements. On May 15, 2003, ACDS applied for a license by submitting its financial statement and evidence of license bond and insurance. On June 5, 2003, the ROC issued ACDS's class K–05 license.

¶3 Meanwhile, on May 23, 2003, ACDS submitted a bid in response to the City of Phoenix's ("the City's") Invitation for Bids (IFB). The City's IFB requested sealed bids for a three-year diving services requirements contract to provide inspection and preventive maintenance services at several of the City's wastewater treatment plants and water reservoirs. The City estimated that the average annual expenditure under the contract would be $125,000. ACDS's bid was the low bid, and on June 20, 2003, the City notified ACDS that its bid had been recommended for approval.

¶4 On June 10, 2003, ADS filed a Complaint with the ROC, alleging that ACDS had violated Arizona Revised Statutes (A.R.S.) section 32–1151 (2002). That section provides in relevant part:

> It is unlawful for any person ... [or] corporation ... to engage in the business of, submit a bid or respond to a request for qualification or a request for proposals for construction services as, act or offer to act in the capacity of or purport to have the capacity of a contractor without having a contractor's license in good standing in the name of the person ... [or] corporation ... unless the person ... [or] corporation ... is exempt.

A.R.S. § 32–1151. ACDS admitted that it did not hold a contractor's license when it submitted its bid to the City, but argued that it had substantially complied with the ROC's licensing provisions, and therefore had not violated the statute. *See City of Phoenix v. Super. Ct.,* 184 Ariz. 435, 909 P.2d 502 (App.1995).

¶5 The ROC conducted an administrative hearing. The ALJ concluded that ACDS had violated A.R.S. § 32–1151, and recommended that ACDS's contractor's license be suspended for a period of three months. The ROC adopted the ALJ's decision, and ACDS filed a complaint for judicial review of the decision in the superior court. ACDS also requested a stay of the ROC's order suspending its license for three months, which the trial court granted. ADS counterclaimed asserting that A.R.S. § 32–1123 mandates a one-year suspension of ACDS's license and requested that the trial court require such a suspension.

¶6 The superior court affirmed the ALJ's decision that ACDS had violated A.R.S. § 32–1151, and concluded that under A.R.S. § 32–1123.A, ACDS should not have been issued a contractor's license for a period of one year from the date of the bid. Because that time had already passed and ACDS's license had remained effective, the trial court ordered that the ROC rescind ACDS's license effective January 26, 2005, and directed the ROC not to reissue the license for a period of one year from that date. ACDS timely appealed the judgment. This court granted ACDS's request for a stay pending the outcome of the appeal.

## DISCUSSION

¶ 7 On review of an administrative agency's decision pursuant to the Administrative Review Act, the superior court determines whether the administrative action was supported by substantial evidence or was contrary to the law, arbitrary and capricious, or an abuse of discretion. *Siegel v. Ariz. St. Liq. Bd.*, 167 Ariz. 400, 401, 807 P.2d 1136, 1137 (App.1991). The trial court does not reweigh the evidence. *Plowman v. Ariz. St. Liq. Bd.*, 152 Ariz. 331, 335, 732 P.2d 222, 226 (App.1986). On appeal, "we review the superior court's judgment to determine whether the record contains evidence to support the judgment." *Smith v. Ariz. Long Term Care Sys.*, 207 Ariz. 217, 221, ¶ 19, 84 P.3d 482, 486 (App.2004)(citing *Ethridge v. Ariz. St. Bd. of Nursing*, 165 Ariz. 97, 100, 796 P.2d 899, 902 (App.1989)). We review *de novo* the superior court's decision "whether the administrative action was illegal, arbitrary, capricious or involved an abuse of discretion." *Id.* (citation omitted). We are free to reach our own legal conclusions if resolution of the case requires the interpretation of any law. *Id.*

### A. Substantial Compliance

¶ 8 ACDS first contends that the superior court erred in affirming the ALJ's decision that ACDS did not substantially comply with the statutory requirement that it be licensed before submitting a bid for contracting work to the City of Phoenix. This court, in *City of Phoenix*, 184 Ariz. at 438, 909 P.2d at 505, concluded that the doctrine of substantial compliance may apply to the statute at issue in this case, A.R.S. § 32–1151. Specifically, if the statute's purpose "to protect the public from unscrupulous, unqualified and financially irresponsible contractors" is satisfied, then substantial compliance suffices. *Id.*

¶ 9 Several factors must be considered in determining whether a contractor has substantially complied with the statutory requirements. The factors are: (1) whether the ROC's failure contributed to the contractor's noncompliance; (2) whether the contractor was financially responsible while its license was suspended or not yet issued; (3) whether the contractor knowingly ignored the registration requirements; (4) whether the contractor immediately remedied the statutory violation; and (5) whether the failure to comply with the statute prejudiced the party the statute seeks to protect. *Id.* (citing *Aesthetic Prop. Maint., Inc. v. Capitol Indem.*, 183 Ariz. 74, 77, 900 P.2d 1210, 1213 (1995)). *Aesthetic Property Maintenance* further provides that knowingly ignoring the registration requirements is fatal to a claim of substantial compliance. 183 Ariz. at 78, 900 P.2d at 1214 ("Did the contractor knowingly ignore the registration requirements? If so, this is fatal to a claim of substantial compliance."); *see also Crowe v. Hickman's Egg Ranch, Inc.*, 202 Ariz. 113, 116, ¶ 10, 41 P.3d 651, 654 (App.2002) (citing *Aesthetic Prop. Maint.*, 183 Ariz. at 78, 900 P.2d at 1214).

¶ 10 In *City of Phoenix*, the contractor possessed a Class A license, but had failed to obtain a Class B license because it had not been thought necessary. After the contractor had submitted a bid on a project for the City of Phoenix, the ROC issued a contrary opinion. 184 Ariz. at 438, 909 P.2d at 505. This court held that the contractor had "substantially complied" with the statute because the error was caused in part by the ROC, the contractor obtained a Class B license as soon as it discovered that it needed to do so, and the City was not prejudiced by the temporary failure to comply. *Id.*

¶ 11 Similarly, in *Aesthetic Property Maintenance*, our Supreme Court held that a contractor had substantially complied with the statute even though its license had been suspended by operation of law for failure to pay a renewal fee. The contractor's failure to timely pay the fee was caused, in part, by the ROC's failure to send the renewal notice to the correct address, even though the contractor had provided the ROC with its new address. Moreover, the contractor had paid the late fee and had the license reinstated as soon as it learned of the suspension. Furthermore, the contractor had remained financially responsible by keeping current its surety bond, workers' compensation insurance, liability insurance and financial documents. 183 Ariz. at 78, 900 P.2d at 1214.

212

¶ 12 Unlike the contractors in *Aesthetic Property Maintenance* and *City of Phoenix*, in this case, the ALJ found that ACDS was aware of its need for a Class K–05 license (as evidenced by the fact that it had applied for one), but had knowingly ignored this requirement and failed to obtain the license before submitting its bid. ACDS contends that the facts do not support the conclusion that it "ignored" the licensing requirements because it had applied and qualified for a license but merely had not received the formal document showing issuance of the license. ACDS admits that it did not possess an actual license, yet knowing that it had not yet received the actual license, ACDS submitted a bid to the City of Phoenix.[1] There was sufficient evidence in the record to support the ALJ's and the superior court's conclusion that ACDS knew that it did not actually possess the required license when it submitted its bid to the City of Phoenix.

¶ 13 ACDS nevertheless contends that the ALJ and the superior court erred in considering only this one factor, rather than balancing all of the factors, in determining that ACDS did not substantially comply with the statute. But our Supreme Court clearly stated that a knowing violation of the licensing requirements is "fatal" to a claim of substantial compliance. *Aesthetic Prop. Maint.*, 183 Ariz. at 78, 900 P.2d at 1214. We are bound by decisions of the Arizona Supreme Court. *Myers v. Reeb*, 190 Ariz. 341, 343, 947 P.2d 915, 917 (App.1997); *McKay v. Indus. Comm'n*, 103 Ariz. 191, 193, 438 P.2d 757, 759 (1968). Therefore, the superior court properly upheld the ALJ's decision that ACDS did not substantially comply with the licensing statutes.

**B. Exemption for "Requirements Contract"**

¶ 14 ACDS contends that the superior court erred in overruling the ALJ's decision that the contract was a "requirements contract" with a potential aggregate net worth of less than $750 and thus subject to the exemp-

tion from the licensing requirement set forth in A.R.S. § 32–1121.A.14 that provides:

A. This chapter shall not be construed to apply to:

. . .

14) Any person other than a licensed contractor engaging in any work . . . for which the aggregate contract price . . . is less than seven hundred fifty dollars. The work or operations which are exempt under this paragraph shall be of a casual or minor nature.

The ALJ concluded that although the City estimated that its annual expenditure on the contract would be $125,000, the price was not a term of the contract, which was a requirements contract at an hourly rate. The ALJ reasoned that "there exists the possibility, however small, that the City would not have any requirements, and would not, therefore, be obligated to pay." The ALJ thus was "unable to conclude . . . that the contract has an aggregate worth of more than $750.00." The ALJ therefore concluded that A.R.S. § 32–1123, requiring a one-year suspension of the license, did not apply, and instead ordered a three-month license suspension.

¶ 15 The superior court, however, concluded that the contract was estimated to be worth $375,000 over the course of its three-year duration and the contract was not "of a casual or minor nature." A.R.S. § 32–1121.A.14. Thus, the superior court concluded that the exemption did not apply. ACDS contends that the superior court erred in overruling the ALJ's finding that the contract did not have a value of more than $750.

¶ 16 As noted above, in reviewing an administrative agency's decision, the superior court must determine whether the administrative action was supported by substantial evidence or was contrary to the law, arbitrary and capricious, or an abuse of discretion. *Siegel*, 167 Ariz. at 401, 807 P.2d at 1137. The superior court correctly concluded that the ALJ's decision that the contract

1. Moreover, the ALJ rejected as "not credible" Hankes' testimony that he had been advised and believed that the receipt for taking the written examination served as a "temporary" license. We defer to the ALJ's credibility determinations.

*Adams v. Indus. Comm'n*, 147 Ariz. 418, 421, 710 P.2d 1073, 1076 (App.1985) (administrative law judge's assessment of the credibility of witnesses is generally binding upon the reviewing court.)

did not have "an aggregate worth of more than $750.00" was not supported by substantial evidence. Although it was a requirements contract, the contract estimated that 1,250 hours would be required over the three-year term, and the record showed that in prior years (1996 to 2003) the services required by the City had fluctuated, ranging from $49,197 to more than $250,000 per year. Thus, the evidence was uncontradicted that well over $750 in services would be required and that the City expected to require approximately $375,000 in services over the three-year contract period. No evidence supported a conclusion that the City would require less than $750 in services under the contract. Additionally, the ALJ did not consider the portion of the statute providing that to be exempt, the work must be "of a casual or minor nature." A.R.S. § 32–1121.A.14. As the superior court concluded, a three-year contract with an expected value of $375,000 is not "of a casual or minor nature," even if it somehow turned out that the City did not require more than $750 in services. The superior court properly concluded that the ALJ abused his discretion in concluding that the exemption applied.

### C. Authority to Rescind License

¶ 17 The superior court concluded that the exemption for minor contracts with a value of less than $750 did not apply and that A.R.S. § 32–1123.A. therefore did apply, and entered an order directing the ROC not issue ACDS a license for one year from the date of the bid. Because the ROC had issued the license before discovering the violation, and because ACDS had obtained a stay of the three-month suspension ordered by the ROC, ACDS had not been subjected to any loss of its license to date. Thus, the superior court directed the ROC to "rescind the license issued to Arizona Commercial Diving Services and to not reissue the license for a period of one year from the date of this Judgment." ACDS contends that the ROC and superior court lack the authority to order that its license be rescinded.

¶ 18 Specifically, ACDS contends that the plain language of the statute provides that the penalty for bidding on a contract without a valid contractor's license is that the ROC "shall not issue the entity a license ... for one year after the date of the bid." A.R.S. § 32–1123.A. Because the statute does not specifically provide that the ROC or the court may suspend or revoke an existing license, ACDS contends that no such authority exists.

¶ 19 In this case, the ROC violated the statute by issuing the license. The statute provides that the ROC "shall not" issue a contractor's license for a period of one year following the violation at issue, but the ROC erroneously issued the license after ACDS violated the law, although before the ROC was aware that ACDS violated the law.

¶ 20 The ROC has authority under A.R.S. § 32–1154 to suspend or revoke a contractor's license for violation of that section. The ALJ specifically concluded that by bidding on a contract without the proper license, ACDS violated A.R.S. §§ 32–1151,–1154.A.7, thus subjecting ACDS to the ROC's authority to suspend or revoke its license. A.R.S. § 32–1154.A.21 clearly allows the ROC to suspend or revoke a license based on "[s]ubsequent discovery of facts which if known at the time of issuance of a license ... would have been grounds to deny the issuance ... of a license."

¶ 21 Moreover, the clear intent of the legislature is to subject unlicensed contractors who bid on qualifying contracts to a one-year penalty period during which time they cannot obtain a license. A.R.S. § 32–1123.A. Thus, the ROC is authorized to suspend or to revoke ACDS's license and to disallow reinstatement of the license for a period of one year. Moreover, the superior court, in reviewing the ALJ's decision for an abuse of discretion or improper application of the law, was authorized to modify the ALJ's decision and state what the proper penalty for ACDS's violation should be. A.R.S. § 12–911.A.5 (2003).

¶ 22 The superior court did not exceed its authority in directing the ROC to rescind ADCS's license and not to reissue it for a period of one year.

### D. Attorneys' Fees

¶23 ADS requests an award of reasonable attorneys' fees and costs incurred in this appeal. As the prevailing party on appeal, ADS is entitled to an award of costs. A.R.S. § 12–341. However, because ADS has provided no argument, or any citation to authority for its request for attorneys' fees and none is apparent, we deny the request. *See Kelly v. NationsBanc Mortgage Corp.*, 199 Ariz. 284, 289, ¶ 26, 17 P.3d 790, 795 (App. 2001).

### CONCLUSION

¶24 For the foregoing reasons, we affirm the judgment. The stay issued by this court on April 14, 2005, is hereby lifted. ADS's request for attorneys' fees is denied, but ADS is directed to file a statement of its costs in accordance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.

CONCURRING: ANN A. SCOTT TIMMER and SUSAN A. EHRLICH, Judges.