681 P.2d 916

**Nicholas REIDY and Pamela Reidy, husband and wife, Plaintiffs/Appellants,**

v.

**Jerry E. BLACKWELL, a single man, Defendant/Appellee.**

No. 2 CA–CIV 4703.

Court of Appeals of Arizona, Division 2.

Nov. 1, 1983.

Review Denied May 21, 1984.

William J. Risner, Tucson, for plaintiffs/appellants.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C., by D. Michael Mandig, Tucson, for defendant/appellee.

## OPINION

HOWARD, Chief Judge.

This is an appeal from the granting of a partial summary judgment. Appellants sued appellee, inter alia, for failure to pay "wages" pursuant to an employment contract entered into between the parties. Appellee answered and subsequently filed a motion for partial summary judgment based upon the deposition of Nicholas Reidy, the copy of the contract and a letter from appellee to Nicholas Reidy. In the reply brief appellants contest the right of the court to consider the deposition of Nicholas Reidy because it was apparently not filed in the trial court. We note that in his motion for summary judgment appellee recited "facts" from the deposition. Appellants made no motion to strike or otherwise object to the use of the deposition which at that time had not been filed in the trial court. We need not, however, rely upon the deposition of Nicholas Reidy since the contract on its face shows that Nicholas

Reidy was acting as a contractor and was precluded from maintaining any action to recover under the contract.

The "employment agreement" was to govern the construction of a home for Mr. Blackwell. Mr. Blackwell is designated as "owner" in the contract and Mr. Reidy as "agent." The agreement required Reidy to act:

"[A]s a working superintendent or foreman in connection with the project by supervising and directing the work using his best skill and attention."

In "supervising and directing" the work, Reidy was required to consult with the architect to insure not only that the design conform with the various governmental rules and regulations, but also that the actual construction of the residence be in accord with the architect's overall concept, plans and specifications. Reidy was also required to maintain a broom-cleaned job site and was required "generally [to] coordinate all portions of the project."

Reidy's responsibility to coordinate the project also included the duty to keep accurate records concerning the cost of all labor, materials, equipment, tools, construction equipment, machinery, utilities, transportation and other facilities and services utilized in connection with the construction project, and obligated him to prepare checks for the payment of these various expenses.

The method, manner and timing of payment of Reidy's compensation was as follows: He was to be paid a rate of $12 per hour, on a weekly basis, for the actual hours he spent as the "working superintendent or foreman on the project." In addition, the agreement provided for a fixed fee of $4,000, payable to Reidy in two installments of $2,000 each—the first one when the project was halfway completed and the second at the point of completion. Furthermore, the agreement provided for a payment to Reidy of a bonus of $1,000 if the project was completed before July 1, 1979, the completion date set forth in the agreement.

At the time the contract was entered into A.R.S. § 32–1153 provided:

"No contractor shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when the contract sued upon was entered into and the alleged cause of action arose."

The term "contractor" was defined at the time the agreement was entered into as follows:

"In this chapter, unless the context otherwise requires, the term 'contractor' is synonymous with the term 'builder' and means a person ... who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct ... any building ...."

In addition to the terms which we have already set forth the contract contains the following:
" * * *

WHEREAS, Owner does not want to employ a contractor in connection with said construction project, but desires to obtain bids from various subcontractors for certain portions of said construction project, and

WHEREAS, Owner desires to employ Agent to assist him in said construction project by obtaining bids from subcontractors, working on the construction, preparing the payroll, making progress payments in connection with the project, and generally coordinating the project, and ...

· NOW THEREFORE, in consideration of the covenants and agreements herein contained the parties do hereby agree as follows:
* * * * * *

3. *Agent's responsibilities.* The Agent shall perform the following in connection with the construction project:

a. Obtain bids from various subcontractors for portions of the work, and assist the Owner in selecting certain contractors to perform the work from the bids obtained;

b. Acting as a working superintendent or foreman in connection with the project by supervising and directing the work using his best skill and attention;

\* \* \* \* \* \*

d. Secure all permits, fees and licenses necessary and required by Owner for execution of the project with all cost therefor to be paid by Owner;

e. Generally assist the Owner in giving all notices and complying with all laws, ordinances, rules, regulations and orders of any public authority bearing on the performance of the work, and notifying the Architect if the drawings and specifications are at variance therewith;

f. Assisting the Owner in reviewing, approving and submitting all samples and shop drawings as directed for approval of the Architect for conformance with the design concept and with the information given in the plans and specifications prepared by said Architect;

\* \* \* \* \* \*

h. To generally coordinate all portions of the project;

\* \* \* ''

There can be no doubt that Reidy was acting under the agreement as a contractor within the meaning of A.R.S. § 32–1101.

A.R.S. § 32–1121(A)(8) exempts from licensing requirements "[a]ny person who engages in the activities regulated by this chapter as an employee with wages as his sole compensation." Appellants contend Nicholas Reidy was such an employee. We do not agree. He was not working solely for wages. He was to get a fixed fee of $4,000. It is clear that the "employment agreement" was a sham and that Reidy was acting as a general contractor. Appellants' contention that Blackwell was estopped to assert the licensing statute as a defense because Blackwell knew and agreed that Reidy had no license is devoid of merit. See *Northern v. Elledge,* 72 Ariz. 166, 232 P.2d 111 (1951). The case of

*Sobel v. Jones,* 96 Ariz. 297, 394 P.2d 415 (1964) cited by appellants is not on point.

Appellants contend that the parol evidence rule prohibited a license defense. This contention is totally devoid of merit and is entitled to no further discussion.

Appellants' contention that since they are only trying to recover for the wages and not the fixed fee they are not barred by the licensing statute is without merit since the agreement was only an ineffective ploy to avoid the licensing statutes.

Appellants' last contention, that appellee cannot raise the affirmative defense of the licensing statute in his motion for summary judgment because he did not plead it, is without merit. An affirmative defense can be raised in a motion for summary judgment although it was never pleaded. See *Weller v. Weller,* 14 Ariz. App. 42, 480 P.2d 379 (1971) (defense of statute of limitations raised for first time in motion for summary judgment). Furthermore, appellants never objected in the trial court to the raising of the licensing defense on the ground that it had not been pleaded.

Affirmed.

HATHAWAY and BIRDSALL, JJ., concur.