254 P.3d 409

William SMITH; and W Inc., an Arizona corporation, Plaintiffs/Appellees,

v.

Krishna PINNAMANENI; and Pioneer Family Investments, LLC, Defendants/Appellants.

No. 1 CA–CV 10–0329.

Court of Appeals of Arizona, Division 1, Department D.

April 28, 2011.

Sawkiw Law PLC By William D. Sawkiw, Mesa, Attorney for Plaintiffs/Appellees.

Burch & Cracchiolo, P.A. By Michael S. Dulberg, and Melissa Iyer, Phoenix, Attorneys for Defendants/Appellants.

## OPINION

NORRIS, Judge.

¶ 1 This appeal arises out of an arbitration award in favor of a contractor, plaintiff/appellee W Inc. We hold the superior court properly confirmed the award against defendant/appellant Pioneer Family Investments, LLC, because Pioneer waived its defense that W Inc. was an unlicensed contractor by failing to raise it in the arbitration. Because the superior court, however, did not determine whether defendant/appellant Krishna Pinnamaneni, a nonparty to the construction contract between W Inc. and Pioneer, was bound to arbitrate, we reverse confirmation of the award against him and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 In October 2007, Pioneer, through its managing member Pinnamaneni (unless separately referenced, collectively, "Defendants"), entered into a contract with W Inc. for construction of a home. W Inc.'s president, William Smith, signed the contract on behalf of W Inc. The contract contained an arbitration clause that stated "[a]ny Claim arising out of or related to the Contract ... shall ... be subject to arbitration." The clause also stated "[t]he award rendered by the arbitrator ... shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof." The clause further specified the arbitration would be conducted by the American Arbitration Association ("AAA") according to the AAA's currently effective Construction Industry Arbitration

Rules ("CIAR").[1] After a dispute arose regarding W Inc.'s work, W Inc. demanded arbitration against Respondent "Krishna Pinnamaneni–Pioneer Family Investments, LLC" in April 2009 as to the scope of work, full and timely payments, and other claims. Later that month, Pinnamaneni filed a complaint with the Arizona Registrar of Contractors ("ROC") against W.W. Smith Construction, Inc., a different construction company headed by Smith. The complaint, however, related to the work on the home.

¶3 Defendants repeatedly told the AAA case manager they did not intend to participate in the arbitration until the ROC had adjudicated the complaint. In September 2009, W Inc. amended its original arbitration demand to seek relief against "Krishna Pinnamaneni" for wrongful termination, demanding work outside the contract, and failing to pay for all work. The arbitrator advised Defendants the filing of the ROC complaint did not stay the arbitration, informed them the arbitration was going forward, and encouraged them to participate.

¶4 Approximately one week before the scheduled arbitration, Pinnamaneni discovered W Inc. did not have a contractor's license in 2007 when the contract was signed and for nearly the entire first year of construction.

On December 15, 2009, W Inc. appeared at the arbitration hearing, but Defendants did not. Consistent with CIAR 30, which prohibited a default award and required a party to offer evidence even if the opposing party was absent from the hearing, W Inc. presented evidence to the arbitrator in support of its claims. Subsequently, the arbitrator issued an award to W Inc. against Defendants for $28,740 in damages and $9190 in fees and expenses.

¶5 W Inc. applied to the superior court for confirmation of the award. Defendants[2] opposed confirmation, arguing W Inc. had "fraudulently entered into a contract without [a contractor's] license, which is a requirement pursuant to Arizona law to perform the type of work which is the subject of the contract at issue in this case."[3] In response, W Inc. argued Defendants had waived their licensing argument by failing to raise it in the arbitration.

¶6 After oral argument on the application, the superior court confirmed the arbitration award and directed W Inc. to submit a proposed form of judgment confirming the award. W Inc. submitted a proposed judgment and Defendants, now represented by counsel, objected, reasserting W Inc. did not have a contractor's license when it entered

1. The arbitrator used the CIAR effective September 1, 2007. Accordingly, all references to the CIAR in this opinion are to that version of the CIAR.

2. Pinnamaneni, a non-lawyer, initially attempted to represent Pioneer. At oral argument on the motion to confirm the award, the superior court informed Pinnamaneni he could not represent Pioneer and could only represent himself. *See Ramada Inns, Inc. v. Lane & Bird Adver., Inc.,* 102 Ariz. 127, 128, 426 P.2d 395, 396 (1967) ("a corporation ... may appear only by attorney").

3. Although Defendants accused W Inc. of inducing them to enter into the contract by misrepresenting its licensing status, Defendants did not separately contest the validity of the arbitration clause itself or argue the clause was independently void or unenforceable. Indeed, in response to the superior court's question about what fraud or deception Pinnamaneni alleged W Inc. had committed, Pinnamaneni stated:

The fraud is, Your Honor, that he always told us W Inc. is a license—Arizona Contractor license. That is requirement for the mortgage

company that I only hire the licensed contractors. Come to find out after one year he tell us that he needed to change the contract because of some insurance issue. Even then he doesn't tell us the truth.

And then when he doesn't do certain things, we told him to finish it in thirty days, and instead using as a response that he goes and preemptively files this arbitration in order to make and to change the date rather than having to address the issues. On December 7th, when we found out that he was operating on an unlicensed contract because he never told us, and that's when we found that this is completely fraud all around and he's hiding the ball, and that was the deception and fraud, Your Honor. And the record provides the proof of that, and I have provided all those documents to you.

Accordingly, Defendants never requested the superior court to determine the validity of the arbitration clause separately from the contract. *See Stevens/Leinweber/Sullens, Inc. v. Holm Dev. & Mgmt., Inc.,* 165 Ariz. 25, 29, 795 P.2d 1308, 1312 (App.1990). On appeal, Defendants have not made such a request nor have they argued that they made such a request in superior court.

into the contract and thus could not recover under Arizona Revised Statutes ("A.R.S.") section 32–1153 (2007). Section 32–1153 prohibits a contractor from "commenc[ing] or maintain[ing] any action in any court of the state for collection of compensation" for contracting work if the contractor was not licensed when the contract was signed and when the cause of action arose. *See infra* ¶ 8. After additional briefing and a second oral argument, the superior court again confirmed the arbitration award and entered judgment against Defendants.[4] Defendants timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

*I. Licensing*

■ ¶ 7 Defendants argue the superior court should not have confirmed the arbitration award in favor of W Inc. because W Inc. failed to prove it was properly licensed in compliance with A.R.S. § 32–1153.[5] We disagree. As we explain, a contractor's lack of licensure is an affirmative defense subject to waiver, and Defendants waived this defense by failing to raise it in the arbitration. Although we normally review a superior court's confirmation of an arbitration award for an abuse of discretion, *FIA Card Servs., N.A. v. Levy*, 219 Ariz. 523, 524, ¶ 5, 200 P.3d 1020, 1021 (App.2008), the issue raised here requires us to consider and interpret legal principles and statutes, so our review is de novo. *Steer v. Eggleston*, 202 Ariz. 523, 527, ¶ 16, 47 P.3d 1161, 1165 (App.2002).

¶ 8 Under A.R.S. § 32–1153,

No contractor ... shall ... commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required ... without alleging and proving that the [contractor] was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.

Arizona courts have treated the lack of licensure as an affirmative defense that must be raised by an opposing party. *See Aesthetic Prop. Maint., Inc. v. Capitol Indem. Corp.*, 183 Ariz. 74, 75, 900 P.2d 1210, 1211 (1995) (Arizona Supreme Court referred to defendant's objection to contractor's lack of license as "rais[ing] the defense of nonlicensure"); *Reidy v. Blackwell*, 140 Ariz. 333, 335, 681 P.2d 916, 918 (App.1983) (calling licensing defense "the affirmative defense of the licensing statute"); *cf. Leone v. Precision Plumbing & Heating of S. Ariz., Inc.*, 121 Ariz. 514, 516, 591 P.2d 1002, 1004 (App.1979) ("Illegality [of contract] is an affirmative defense that must be pleaded."). And, in Arizona, as a general matter, failure to plead an affirmative defense results in waiver of the defense. *City of Phx. v. Fields*, 219 Ariz. 568, 574, ¶ 27, 201 P.3d 529, 535 (2009); *see Spaw–Glass Constr. Servs., Inc. v. Vista De Santa Fe, Inc.*, 114 N.M. 557, 844 P.2d 807, 809 (1992) (licensing defense should have been raised in arbitration and failure to do so constituted waiver); *Davidson v. Hensen*, 135 Wash.2d 112, 954 P.2d 1327, 1336–37 (1998) (contractor's noncompliance with license registration requirement is affirmative defense that must be timely pleaded or is waived).

¶ 9 Older cases in Arizona treated contracts with unlicensed contractors as illegal and void *ab initio*, meaning unenforceable. *See, e.g., Hunt v. Douglas Lumber Co.*, 41

---

4. In entering judgment against Defendants, the superior court found W Inc. had substantially complied with A.R.S. § 32–1153. On appeal, W Inc. argues we can affirm the judgment in its favor based on this finding. We disagree. First, as discussed below, because Defendants waived their right to contest W Inc.'s licensing status by failing to raise that issue in the arbitration, whether W Inc. had substantially complied with the statute was not an issue properly before the superior court. Second, even if that issue was properly before the superior court, W Inc. did not present any admissible evidence to the court demonstrating it had substantially complied with

A.R.S. § 32–1153, pursuant to the requirements identified by our supreme court in *Aesthetic Property Maintenance, Inc. v. Capitol Indemnity Corp.*, 183 Ariz. 74, 78, 900 P.2d 1210, 1214 (1995).

5. Pioneer and Pinnamaneni jointly raise this argument on appeal; however, Pinnamaneni also raises an argument, *see infra* Part II, applicable only to him. We refer to them collectively in Part I of this opinion but acknowledge our holding on the licensing issue will not apply to Pinnamaneni if on remand the superior court finds he is not bound by the arbitration clause.

Ariz. 276, 287–88, 17 P.2d 815, 819 (1933). More recent case law, however, treats contracts with unlicensed contractors as voidable, not void, meaning they are enforceable if certain conditions are met. For example, in *Aesthetic Property Maintenance,* the Arizona Supreme Court held an unlicensed contractor could seek compensation under A.R.S. § 32–1153 by substantially complying with the licensing requirements. 183 Ariz. at 78, 900 P.2d at 1214. In so holding, the court recognized substantial compliance satisfied the purpose of the statute, which was not to punish licensees who had failed to strictly comply with the statutory requirements, but "to protect the public from unscrupulous, unqualified, and financially irresponsible contractors." *Id.* at 77–78, 900 P.2d at 1213–14; *see Bentivegna v. Powers Steel & Wire Prods., Inc.,* 206 Ariz. 581, 587, ¶ 23, 81 P.3d 1040, 1046 (App.2003) (under substantial compliance doctrine, "even unlicensed contractors are not automatically barred from bringing an action for amounts due"); *Davidson,* 954 P.2d at 1336 (failing to comply with licensing registration statute does not make contract void *ab initio*; "very applicability of the substantial compliance doctrine to such circumstances argues that a contract subject to the statute is not void"). Because, under the Arizona authorities discussed above, contracts with unlicensed contractors are not per se unenforceable and unlicensed contractors can seek compensation under A.R.S. § 32–1153 if they show substantial compliance with licensing requirements, the burden is on the opposing party to affirmatively raise the defense of lack of licensure and that party's failure to do so constitutes a waiver. *See Herstam v. Deloitte & Touche, LLP,* 186 Ariz. 110, 115–16, 919 P.2d 1381, 1386–87 (App.1996) (statutes enacted to protect individuals may nonetheless be waived by those individuals); *McClellan Mortg. Co. v. Storey,* 146 Ariz. 185, 188, 704 P.2d 826, 829 (App. 1985) ("It is well settled that most rights may be waived.").

¶ 10 Here, Defendants knew of W Inc.'s unlicensed status before the arbitration hearing. Yet, instead of raising W Inc.'s status as a defense to W Inc.'s claim in the arbitration, Defendants chose not to participate in the arbitration and elected not to attend the hearing. Accordingly, Defendants waived the affirmative defense of W Inc.'s lack of licensure. *See Leone,* 121 Ariz. at 516, 591 P.2d at 1004; *Spaw–Glass,* 844 P.2d at 809; *Davidson,* 954 P.2d at 1332.

¶ 11 Despite their refusal to participate in the arbitration, Defendants nevertheless argue they could not have waived the licensing defense because "the issue of statutory compliance [by W Inc. did] not become ripe for adjudication ... until [W Inc. sought] confirmation of [the] arbitration award ... in superior court." They assert the issue procedurally could only be raised in superior court and substantively could only be decided by the superior court. We disagree for three reasons.

¶ 12 First, procedurally, by agreeing to arbitrate "[a]ny Claim arising out of or related to the Contract," Defendants agreed to arbitrate any defenses they had to those claims. *See City of Cottonwood v. James L. Fann Contracting, Inc.,* 179 Ariz. 185, 189, 877 P.2d 284, 288 (App.1994) (arbitration clauses are "construed liberally and any doubts about whether a matter is subject to arbitration are resolved in favor of arbitration"). Thus, Defendants were obligated to raise the affirmative defense available to them under A.R.S. § 32–1153 in the arbitration—not in the superior court. As we have recognized, "arbitration is a means to resolve a civil action in an alternative forum," *Mathews ex rel. Mathews v. Life Care Ctrs. of Am., Inc.,* 217 Ariz. 606, 609, ¶ 9, 177 P.3d 867, 870 (App.2008), and therefore, procedurally, W Inc.'s licensing status was "ripe" for adjudication in the arbitration and Defendants were not entitled to wait until W Inc. sought confirmation of the arbitrator's award to raise the issue.

¶ 13 Further, Defendants not only agreed to raise their defenses in arbitration but, by doing so, essentially agreed to limit their challenges to confirmation of the arbitration award in superior court to those enumerated in A.R.S. § 12–1512 (2003). *Heinig v. Hudman,* 177 Ariz. 66, 73, 865 P.2d 110, 117 (App.1993) (superior court may consider challenge to confirmation of arbitration award only on statutorily enumerated grounds); *see*

*infra* ¶ 24. Although Defendants assert they could not raise W Inc.'s licensing status until the matter reached superior court, the limited statutory grounds for challenging confirmation of an arbitrator's award support our conclusion that procedurally Defendants could and should have raised the issue in the arbitration.

¶ 14 Second, substantively, Defendants were entitled to challenge W Inc.'s licensing status in the arbitration. The contract here stated it was "governed by the law of the place where the Project is located." Thus, Arizona law applied and the arbitrator was authorized—indeed, required—to apply Arizona law, including § 32–1153. *Cf. Mathews,* 217 Ariz. at 610, ¶ 19, 177 P.3d at 871 (arbitration clause directed arbitrator to "apply the substantive law of Arizona" and thus arbitrator could apply Arizona Adult Protective Services Act in resolving case); *see also Verdex Steel & Constr. Co. v. Bd. of Supervisors, Maricopa Cnty.,* 19 Ariz.App. 547, 551, 509 P.2d 240, 244 (1973) (arbitrators "empowered to decide questions of fact" and law).

¶ 15 Additionally, our case law has recognized that parties can challenge contractor licensing compliance in a variety of settings. Section 32–1151 (2007) directly prohibits unlicensed contracting, and absent substantial compliance, such activity is unlawful and can be contested in administrative proceedings and in and out of the superior court. *See Ariz. Commercial Diving Servs., Inc. v. Applied Diving Servs., Inc.,* 212 Ariz. 208, 210, ¶¶ 4–5, 129 P.3d 497, 499 (App.2006) (ROC complaint against contractor alleging violation of A.R.S. § 32–1151; administrative law judge found contractor did not substantially comply with licensing requirements); *City of Phx. v. Superior Court,* 184 Ariz. 435, 437, 909 P.2d 502, 504 (App.1996) (bid protest originally made to municipality; competitor argued low bidder was unqualified because unlicensed in violation of § 32–1151; bid protest then contested in superior court). Similarly, when, as here, a contractor and another party have agreed to arbitrate all claims arising out of their contract, and the two parties have agreed that Arizona law should govern the contract, we can see no reason why the contractor's compliance with licensing requirements and its right to seek compensation under § 32–1153 should not be raised in the arbitration.

¶ 16 Third, adopting Defendants' argument would defeat the objectives of arbitration. The primary purpose of arbitration is to provide "an alternative to litigation so that the parties may 'obtain an inexpensive and speedy final disposition of the matter.'" *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 180 Ariz. 148, 152, 882 P.2d 1274, 1278 (1994) (quoting *Smitty's Super–Valu, Inc. v. Pasqualetti,* 22 Ariz.App. 178, 182, 525 P.2d 309, 313 (1974)). Allowing Defendants to raise the licensing defense at confirmation instead of in the arbitration would result in another round of litigation on an issue that, as discussed above, was procedurally and substantively arbitrable.[6]

¶ 17 Furthermore, we are unpersuaded by Defendants' reliance on *Franklin v. Nat C. Goldstone Agency,* a case in which the California Supreme Court reversed a trial court's confirmation of an arbitration award entered in favor of unlicensed interior decorators. 33 Cal.2d 628, 204 P.2d 37, 40 (1949). The court characterized the contract with the decorators as illegal and in violation of public policy. *Id.* Similar to Arizona statutes, the California statutes prohibited unlicensed contracting and barred unlicensed contractors from seeking compensation in court. *Id.* The court stated that to uphold the arbitration award in defiance of these statutes would mean "a person with a claim forbidden by law would be permitted to enforce it through the transforming process of arbitration." *Id.* The principle set forth in *Franklin* has been followed by subsequent California cases. *See Lindenstadt v. Staff Builders, Inc.,* 55 Cal. App.4th 882, 64 Cal.Rptr.2d 484, 490 (1997) (trial court must consider whether contract

---

6. Defendants argue the language of A.R.S. § 32–1153 prevented them from raising the licensing defense in the arbitration because an arbitration is not an "action in any court of the state." Because we hold Defendants agreed to arbitration as the method of resolving "[a]ny Claim arising out of or related to the Contract" with W Inc., rather than raising their challenges in a court "action," we need not decide what constitutes an "action" under § 32–1153.

was illegal and arbitrator's ruling on issue was not binding).

¶ 18 The California Supreme Court's approach to arbitration and unlicensed contracting is not consistent with the Arizona authorities discussed above.[7] Although it is unlawful for a person to act as a contractor without holding a license, A.R.S. § 32–1151, contracts with unlicensed contractors are not per se unenforceable and against public policy in this state and an unlicensed contractor is entitled to seek compensation if it demonstrates it substantially complied with licensing requirements. *See Aesthetic Prop. Maint.*, 183 Ariz. at 78, 900 P.2d at 1214; *see also* cases cited *supra* ¶ 9.

¶ 19 Our recognition that Defendants could contest W Inc.'s licensing status in the arbitration and that their failure to do so constituted a waiver is consistent with the purpose of A.R.S. § 32–1153, which is "to protect the public from unscrupulous, unqualified, and financially irresponsible contractors." *Aesthetic Prop. Maint.*, 183 Ariz. at 77, 900 P.2d at 1213. Parties who sign a construction contract containing an arbitration clause still receive the protection of the statute; they are simply required to raise a contractor's lack of licensing in the arbitration—the forum they selected for resolving disputes.

¶ 20 In summary, we hold Defendants waived W Inc.'s failure to comply with the applicable licensing requirements by not raising its noncompliance in the arbitration. Accordingly, W Inc. was not required to affirmatively prove compliance with A.R.S. § 32–1153 when it sought confirmation of the arbitration award. The superior court, thus,

properly confirmed the arbitration award in favor of W Inc.

## II. *Pinnamaneni's Personal Liability*

¶ 21 Pinnamaneni argues the superior court should not have confirmed the arbitration award against him personally because he was not a party to the contract with W Inc. and thus was not bound by the arbitration clause. Although we agree that, on its face, Pinnamaneni was not a party to the contract between Pioneer and W Inc., whether Pinnamaneni was bound to the arbitration clause is an issue that has not yet been determined and, as we explain, under the circumstances of this case, should have been independently decided by the superior court.[8] Whether the superior court was required to decide this issue presents an issue of law. Thus, our review is de novo. *See* cases cited *infra* ¶ 25. *See generally Cmty. Guardian Bank v. Hamlin*, 182 Ariz. 627, 630, 898 P.2d 1005, 1008 (App.1995) (issue of law reviewed de novo).

¶ 22 In general, a party is bound to arbitrate only those disputes which it has contractually agreed to arbitrate. *Clarke v. ASARCO Inc.*, 123 Ariz. 587, 589, 601 P.2d 587, 589 (1979). Here, the contract on its face was between Pioneer and W Inc., and Pinnamaneni's signature on the contract was on behalf of Pioneer, an LLC that could act only through an agent, such as its managing member. *See Ferrarell v. Robinson*, 11 Ariz. App. 473, 475, 465 P.2d 610, 612 (1970) (person "who signs an agreement as the agent of a fully disclosed principal is not a party to that agreement" and incurs no personal lia-

---

7. This court, citing *Franklin*, recognized performance of an illegal act, such as construction by unlicensed contractors, could be a ground for refusing to enforce an arbitration award. *Flower World of Am., Inc. v. Wenzel*, 122 Ariz. 319, 323, 594 P.2d 1015, 1019 (App.1979). However, *Flower World* predates our supreme court's recognition, in *Aesthetic Property Maintenance*, 183 Ariz. at 77–78, 900 P.2d at 1213–14, of the substantial compliance doctrine under A.R.S. § 32–1153.

8. W Inc. asserts Pinnamaneni failed to argue he was not personally liable in the superior court and thus waived the issue on appeal. While Pinnamaneni presented the argument imperfectly, he did present it. In the oral argument on W

Inc.'s application for confirmation, Pinnamaneni stated, "the individuals that [are] working on behalf of the Pioneer Family Investments are not subjected to that thing [the arbitration award], even if the contract is valid." Additionally, Pinnamaneni raised the argument in objecting to the proposed form of judgment and in the oral argument on that objection. During that oral argument, Pinnamaneni's counsel stated: "In fact, if Dr. Pinnamaneni had actually participated in the arbitration, then he would have waived his arbitrability ... argument. He would have waived the argument that he's not personally subject to the arbitration clause. By not participating, he actually preserved that defense."

bility for breach by the principal). Nothing in the record demonstrates Pinnamaneni agreed to be personally bound to the contract or its arbitration clause, and thus we agree Pinnamaneni was not a party to the contract.

■ ¶ 23 Nonsignatories, however, can be required to arbitrate under certain circumstances. *See, e.g., Schoneberger v. Oelze,* 208 Ariz. 591, 594, ¶ 14, 96 P.3d 1078, 1081 (App. 2004) (nonparty to arbitration clause may be bound to arbitrate by estoppel); *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1076 (5th Cir.2002) (a nonsignatory may be bound to arbitrate under five theories of contract and agency law). Because Pinnamaneni was a nonsignatory, the issue becomes who decides whether he was nonetheless bound by the arbitration clause.[9] We hold the superior court must make that decision and cannot simply defer to the finding of the arbitrator.

■ ¶ 24 In Arizona, parties opposing the confirmation of an arbitration award can challenge the award only on the grounds enumerated in A.R.S. § 12–1512. *Heinig,* 177 Ariz. at 73, 865 P.2d at 117. Subsection (A)(5) of § 12–1512 reads as follows:

A. Upon filing of a pleading in opposition to an award, and upon an adequate showing in support thereof, the court shall decline to confirm and award and enter judgment thereon where:

. . .

5. There was no arbitration agreement and the issue was not adversely determined in proceedings under § 12–1502 and the adverse party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

In *Migneault v. United Services Automobile Ass'n,* this court construed § 12–1512(A)(5) and held the appellant could not seek to vacate the arbitration award in opposing confirmation because he participated in the arbitration without objection. 21 Ariz.App. 397, 399–400, 519 P.2d 1162, 1164–65 (1974). Although the statutory language of § 12–1512(A)(5) is somewhat convoluted, it provides that one who consents to arbitration without objection—even when there is no binding contract, *Verdex Steel,* 19 Ariz.App. at 550, 509 P.2d at 243, or when issues beyond the scope of a binding arbitration clause are arbitrated, *Migneault,* 21 Ariz. App. at 399, 519 P.2d at 1164—must abide by the arbitrator's decision and cannot seek to vacate it at confirmation. Because Pinnamaneni did not participate in the arbitration, he retained his right to assert he had not agreed to arbitrate with W Inc., A.R.S. § 12–1512(A)(5), and to have a court decide whether as a nonsignatory he was nevertheless required to arbitrate. *See Parekh Constr., Inc. v. Pitt Constr. Corp.,* 31 Mass.App.Ct. 354, 577 N.E.2d 632, 635–36 (1991) (contractor who did not appear in arbitration still allowed to raise argument in court that no contract existed).

¶ 25 Requiring the superior court to decide whether Pinnamaneni was bound by the arbitration clause is consistent with cases applying the Federal Arbitration Act as well. While an arbitration clause can provide an arbitrator with the authority to rule on whether issues are arbitrable, *see First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995), an arbitrator normally cannot decide the threshold issue of whether a party is bound to arbitrate at all. *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 643 (Tex.2009) ("Under the [Federal Arbitration Act], whether an arbitration agreement binds a nonsignatory is a gateway matter to be determined by courts rather than arbitrators unless the parties clearly and unmistakably provide otherwise."); *see Granite Rock Co. v. Int'l Bhd. of Teamsters,* —— U.S. ——,

9. We note the arbitration clause in the contract states:

No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and *other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration.*
(Emphasis added.)

——–——, 130 S.Ct. 2847, 2855–56, 177 L.Ed.2d 567 (2010) ("well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide"); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir.2001) ("Arbitrators lack a comparable authority to determine their own authority because there is a non-circular alternative (the judiciary) and because the parties *do* control the existence and limits of an arbitrator's power. No contract, no power."); *MCI Telecomm. Corp. v. Exalon Indus., Inc.*, 138 F.3d 426, 430 (1st Cir.1998) (even after arbitration occurred and party had not appeared, party could challenge validity of arbitration award at confirmation on ground that no agreement to arbitrate existed); *MJR Int'l, Inc. v. Am. Arbitration Ass'n*, 596 F.Supp.2d 1090, 1096 (S.D.Ohio 2009) ("In cases like this one, involving disputes about whether a purported agent had the authority to bind a nonsignatory princip[al] to a contract containing an arbitration clause, federal courts have repeatedly held that the court, not the arbitrator, must decide whether there is an agreement to arbitrate."). The *MCI* court provided a clear explanation for why a court should decide this issue, which it called "the mother of arbitrability questions," and why a party who denied the existence of a written agreement to arbitrate can still assert it was not bound even after the arbitration had occurred:

> Thus, if there is no such agreement, the actions of the arbitrator have no legal validity. It follows that one is not required to mount a collateral challenge to such an ineffectual action, for if the agreement to arbitrate does not exist, there is no obligation to arbitrate—and a noncontracting person's failure to appear at the arbitration hearing does not create such an obligation.
>
> A party that contends that it is not bound by an agreement to arbitrate can therefore simply abstain from participation in the proceedings, and raise the inexistence of a written contractual agreement

to arbitrate as a defense to a proceeding seeking confirmation of the arbitration award....

*MCI*, 138 F.3d at 429–30.

¶ 26 Finally, we reject W Inc.'s argument that the arbitrator and the superior court both determined Pinnamaneni was personally bound to the contract, and thus to the arbitration clause as well. First, even assuming the arbitrator decided this issue (which is not clear from the record), because, under the circumstances of this case, the superior court was required to decide whether Pinnamaneni was bound, the arbitrator's determination of this issue was immaterial and not entitled to deference. Second, nothing in the record demonstrates the superior court independently considered whether Pinnamaneni should be bound by the arbitration clause.

¶ 27 In light of Arizona statutes and case law and supporting federal case law, we remand to the superior court to decide whether Pinnamaneni was personally bound by the arbitration clause. We express no opinion on whether the court should hold an evidentiary hearing or decide this issue on the record as it currently exists.

¶ 28 If on remand the superior court finds Pinnamaneni was bound by the arbitration clause, the court should confirm the arbitration award against him personally. Because Pinnamaneni chose not to appear in the arbitration, if he is found to be personally bound he is in the same position as Pioneer and the arbitration award is final against him. *MCI*, 138 F.3d at 430 (analogizing to defendant who questions personal jurisdiction, does not appear, and plaintiff obtains default judgment; if court later finds personal jurisdiction, defendant must abide by default judgment).

### III. *Attorneys' Fees and Costs on Appeal*

¶ 29 Both sides have requested an award of attorneys' fees on appeal under A.R.S. § 12–1514 (2003).[10] Under § 12–1514,

10. The parties also request an award of attorneys' fees under A.R.S. § 12–341.01 (2003). Because fees for confirmation of an arbitration award and from an appeal from a confirmation

can be awarded under A.R.S. § 12–1514, we need not consider this statute. *See Canon Sch. Dist.*, 180 Ariz. at 153, 882 P.2d at 1279 (unnecessary to consider fees under § 12–341.01 be-

a court may award attorneys' fees from a confirmation proceeding or an appeal from such a proceeding. *Steer*, 202 Ariz. at 528, ¶ 25, 47 P.3d at 1166. Because neither side has secured full relief, in the exercise of our discretion, we decline to award fees to either. *Canon Sch. Dist.*, 180 Ariz. at 154, 882 P.2d at 1280 (exercising discretion to deny fees because party was only "partially successful in the appeal"). Further, because neither side is a "successful party," neither is entitled to costs. A.R.S. § 12–341 (2003).

## CONCLUSION

¶ 30 For the foregoing reasons, we affirm the superior court's confirmation of the arbitration award against Pioneer and reverse confirmation of the award against Pinnamaneni. We remand to the superior court to decide whether Pinnamaneni was personally bound by the arbitration clause and for further proceedings consistent with this opinion.

CONCURRING: JOHN C. GEMMILL, and PATRICIA A. OROZCO, Judges.

cause fees can be awarded under § 12–1514). Even if we considered the parties' fee requests under § 12–341.01, we would still decline to award fees in the exercise of our discretion because neither side obtained full relief.