IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GREGORY G. MCGILL, P.C., *Plaintiff/Appellee*,

*v.*

JUDSON C. BALL, *Defendant/Appellant*.

No. 1 CA-CV 21-0580
FILED 10-11-2022

Appeal from the Superior Court in Maricopa County
No.  CV2020-011144
The Honorable Pamela S. Gates, Judge

**AFFIRMED IN PART, VACATED IN PART**

COUNSEL

McGill Law Firm, Scottsdale
By Gregory G. McGill
*Counsel for Plaintiff/Appellee*

Ahwatukee Legal Office PC, Phoenix
By David L. Abney
*Co-Counsel for Defendant/Appellant*

Law Offices of A. Thomas Smith PLLC, Phoenix
By A. Thomas Smith
*Co-Counsel for Defendant/Appellant*

## OPINION

Judge Angela K. Paton delivered the opinion of the Court, in which Presiding Judge Paul J. McMurdie and Chief Judge Kent E. Cattani joined.

---

**P A T O N**, Judge:

¶1        Judson C. Ball ("Ball") appeals the superior court's judgment confirming an arbitration award in favor of the law firm, Gregory G. McGill, PC (the "Firm"), and awarding attorneys' fees.  We affirm confirmation of the arbitration award but vacate the attorneys' fees award.

### FACTS AND PROCEDURAL HISTORY

¶2        In 2018, Ball signed a fee agreement for the Firm to represent Ball in a federal court action.  The agreement required arbitration over any fee disputes without expressly designating whether the arbitration was binding or non-binding.  Ball then formed Pacesetter Consulting, LLC ("Pacesetter"), and assigned his rights in all claims related to the federal litigation to Pacesetter.  The Firm, through its principal attorney, Gregory G. McGill, filed a lawsuit on behalf of Pacesetter in federal court.

¶3        Ball later disputed the fees the Firm billed in that litigation. Ball discharged McGill as counsel and agreed, in writing, to abide by a decision regarding the fee dispute to be determined by an impartial legal authority.  Both parties participated in a four-day arbitration, where Ball argued that McGill had overbilled for his work and requested a fee reduction.  After the hearing, the arbitrator awarded the Firm its requested fees and costs.

¶4        Ball, however, still refused to pay, so the Firm, represented by McGill, applied for confirmation of the arbitration award in the superior court, citing Arizona's Uniform Arbitration Act ("UAA"), A.R.S. §§ 12-1501 to -1518.  Ball moved to dismiss, arguing the fee agreement provided for "nonbinding" arbitration.  The court found that Ball was bound by the arbitrator's decision because he had participated in the arbitration.  The Firm moved for attorneys' fees in seeking confirmation of the arbitration award.  The court awarded attorneys' fees and entered a final judgment confirming the arbitrator's decision.

¶5        Ball timely appealed, challenging both the confirmation of the arbitration award and the award of attorneys' fees to the Firm.  We have

jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-2101(A)(1), and -2101.01(A)(6).

## DISCUSSION

**I.** **The superior court did not err in confirming the arbitration award.**

**¶6**        Ball challenges the superior court's confirmation of the arbitration award. McGill argues Ball is bound by the arbitration award because he participated in the arbitration without arguing that it was non-binding and never moved to vacate the award.

**¶7**        We review the superior court's ruling in the light most favorable to upholding the confirmation of the award, which will be affirmed absent an abuse of discretion. *RS Indus., Inc. v. Candrian*, 240 Ariz. 132, 135, ¶ 7 (App. 2016) (citing *Atreus Cmtys. Grp. of Ariz. v. Stardust Dev., Inc.*, 229 Ariz. 503, 506, ¶ 13 (App. 2012)). We review de novo issues of law, including interpretation of a statute. *See Smith v. Pinnamaneni*, 227 Ariz. 170, 173, ¶ 7 (App. 2011) (citing *Steer v. Eggleston*, 202 Ariz. 523, 527, ¶ 16 (App. 2002)).

**¶8**        Although both parties cite the UAA in support of their arguments, Arizona's Revised Uniform Arbitration Act ("RUAA"), A.R.S. §§ 12-3001 to -3029, governs this dispute. The fee agreement containing the arbitration clause was signed in 2018, and the RUAA governs agreements to arbitrate made on or after January 1, 2011. *See* A.R.S. § 12-3003(A)(1).

**¶9**        Judicial review of an arbitration award is significantly limited by the RUAA. *See Candrian*, 240 Ariz. at 135, ¶ 7 (citing *City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 189 (App. 1994)). By agreeing to arbitrate a fee dispute, Ball agreed to limit his challenges to confirmation of the arbitration award in superior court to those statutorily enumerated in A.R.S. § 12-3023. *See Smith*, 227 Ariz. at 174-75, ¶ 13 (addressing the UAA and noting that the "superior court may consider [a] challenge to confirmation of [an] arbitration award only on statutorily enumerated grounds" (citing *Heinig v. Hudman*, 177 Ariz. 66, 73 (App. 1993))).

**¶10**        Here, Ball did not move to vacate the arbitration award on any of the grounds specified in the RUAA. And, as discussed below, we find that none of his arguments raised on appeal provide any reason to vacate the award.

### A.    Waiver of the Right to Jury Trial

**¶11**    Ball argues the superior court erred in confirming the arbitration award because he never agreed to waive his constitutional right to a jury trial.  But Ball necessarily waived his right to a jury trial by signing a fee agreement providing for arbitration.  *See Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 249, ¶ 27 (App. 2005) (rejecting the argument that an arbitration clause must conspicuously or explicitly waive the right to a jury trial to be valid and citing other cases noting that the "loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." (quoting *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002))).

### B.    Enforceability

**¶12**    Ball contends the arbitration award is not binding or judicially enforceable and that non-binding arbitration, which he seems to equate to mediation, was the sole remedy provided in the fee agreement.  We disagree.

**¶13**    We interpret the provisions of a contract de novo.  *Dunn v. FastMed Urgent Care PC*, 245 Ariz. 35, 38, ¶ 10 (App. 2018).  While we construe ambiguous terms in a contract against a drafter, we will enforce unambiguous terms according to their plain meaning, taken in the context of the contract as a whole.  *See United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 258 (App. 1983); *Prieve v. Flying Diamond Airpark, LLC*, 252 Ariz. 195, 198, ¶ 8 (App. 2021) (citing *IB Prop. Holdings, LLC v. Rancho Del Mar Apts. Ltd. P'ship*, 228 Ariz. 61, 66 -67 ¶ 16 (App. 2011)).

**¶14**    Although both are forms of alternative dispute resolution, arbitration and mediation are quite different.  Arbitration is a binding dispute resolution process where parties submit their dispute to one or more neutral third parties. *Arbitration*, *Black's Law Dictionary* (3d. pocket ed. 2006).  Mediation, by contrast, is a non-binding form of alternative dispute resolution. *Mediation, Black's, supra*; *see also* A.R.S. § 12-2238(G)(4) (defining mediation in the context of privileged communications); *but see* 1 Sarah R. Cole et al., *Mediation: Law, Policy and Practice* § 6.8 (Nov. 2021 Update) ("Courts, like contract drafters, *erroneously* use the term 'mediation' to describe processes other than mediation."). (Emphasis added).  The terms are not interchangeable.

**¶15**    We agree with other jurisdictions that have concluded that using the word arbitration in a contract refers to binding dispute resolution. *See e.g.*, *Rainwater v. National Home Ins. Co.*, 944 F.2d 190, 192 (4th Cir. 1991)

("[W]e note the presumption that one submits to arbitration, as opposed to mediation, precisely *because of* the binding quality of the process.") (citing 2A Michie's *Jurisprudence, Arbitration* § 4)); *Moncharsh v. Heily & Blase*, 3 Cal.4th 1, 9 (1992) ("[I]t is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final."); *Ringwelski v. Pederson*, 919 P.2d 957, 958-59 (Colo. App. 1996); *Kelleher v. Cerosimo*, 320 N.E.2d 840, 840-41 (Mass. App. 1974).

¶16 Our examination of other jurisdictions merely reinforces what we know from the plain meaning of the word arbitration in Arizona: the parties here agreed to a binding process. This resolution is consistent with Arizona case law concerning the binding effect of an arbitration award. *See e.g.*, *Smitty's Super-Valu, Inc., v. Pasqualetti*, 22 Ariz. App. 178, 180 (1974); *Atreus*, 229 Ariz. at 506, ¶ 13. And the binding nature of such an award is consistent with the limited challenges to enforceability specified in the RUAA. *See* A.R.S. §§ 12-3022, -3023. While we construe ambiguous contract provisions against the drafter, there is no ambiguity here. If the contract provided for non-binding alternative dispute resolution, either the word arbitration would not have been used or the parties would have stated that the process would be non-binding. Because they did not, and because Ball voluntarily participated without objection, the arbitration was binding. Under Section 12-3022, when the Firm applied for confirmation of the arbitration award, the superior court was required to confirm the award unless a statutorily enumerated ground to modify, correct, or vacate the award was implicated. *Russell Piccoli P.L.C. v. O'Donnell*, 237 Ariz. 43, 49, ¶ 23 (App. 2015) (quoting *Nolan v. Kenner*, 226 Ariz. 459, 461, ¶ 5 (App. 2011) ("The superior court may reject an arbitration award only on narrow statutorily enumerated grounds . . . ."); *see also Hamblen v. Hatch*, 242 Ariz. 483, 490, ¶ 31 (2017) (RUAA "strictly limits the superior court's options after the arbitration process is complete." (citing A.R.S. § 12-3022)). None of those grounds were implicated there. The court correctly confirmed the arbitration award.

### C.    Mutual Consent

¶17 Ball argues that the arbitration confirmation statutes do not apply because the Firm never established mutual consent to a binding arbitration. Indeed, contract defenses can affect the enforceability of an agreement to arbitrate. A.R.S. § 12-3006(A). But as noted *supra*, the agreement to arbitrate necessarily involved binding arbitration. *See Atreus*, 229 Ariz. at 506, ¶ 13; *Harrington*, 211 Ariz. at 249, ¶ 27; *Smitty's*, 22 Ariz. App. at 180-81.

¶18          Further, even without an agreement to arbitrate, a party's participation in the arbitration proceeding without objection waives the right to challenge the arbitration award. *See* A.R.S. § 12-3023(A)(5); *see also Migneault v. United Servs. Auto. Ass'n*, 21 Ariz. App. 397, 400 (1974) ("Fairness demands that parties be bound by the arbitrator's decision on all issues which they willingly and without objection arbitrate although the issues transcend the formal arbitration agreement."). The superior court found that Ball consented to binding arbitration of the fee dispute by executing a fee agreement with the private arbitration clause and participating in the arbitration without objection. The record supports this finding.

### D.    Employment Exception Argument

¶19          Ball argues that the arbitration confirmation statutes do not apply, asserting that McGill was Ball's employee, and that the statutes do not apply to arbitration agreements between employers and employees. *See generally* A.R.S. § 12-3003(B)(1). We disagree that McGill was Ball's employee. Although Section 12-3003 does not define employee or employer, we construe those terms using their common meanings. *See e.g.*, A.R.S. § 1–213; *see also United Dairymen of Ariz. v. Rawlings*, 217 Ariz. 592, 596, ¶ 16 (App. 2008) (discussing A.R.S. § 1-213). This court has agreed with the plain, ordinary definition of "employee" (in an insurance contract interpretation case) as "an individual who works for the assured for compensation and is subject to his direction and control." *Ariz. Prop. & Cas. Ins. Guar. Fund v. Dailey*, 156 Ariz. 257, 259 (App. 1987) (quoting *Petronzio v. Brayda*, 350 A.2d 256, 259 (N.J. Super. Ct. App. Div. 1975)). Using this definition, Ball has not established that McGill was his employee. The agreement did not refer to "employee" or "employer" and instead referred to the Firm as the "attorney" and Ball as "the client." Ball provided no evidence that he controlled and directed McGill or the Firm, issued a W-2 form to McGill or the Firm, or that McGill or the Firm were anything other than independent contractors. We find Ball's argument that McGill was his employee unavailing.

### E.    Defense to Underlying Claim

¶20          Ball argues the Firm cannot collect any fee for services provided to Pacesetter because Pacesetter did not have a fee agreement with the Firm. By agreeing to arbitrate any fee disputes related to the federal litigation, however, Ball "agreed to arbitrate any defenses" he had to those claims. *Smith*, 227 Ariz. at 174, ¶ 12 (citing *Cottonwood*, 179 Ariz. at 189). And nothing in the record suggests that Ball raised this defense with

the arbitrator. Instead, the record shows that after Ball signed the fee agreement with the Firm, Ball formed Pacesetter and assigned his rights in all claims related to the federal litigation to Pacesetter. The Firm performed work on behalf of Pacesetter; Ball agreed to arbitrate the fee dispute and specifically asked the arbitrator for a reduction in the Firm's fees related to the Pacesetter litigation. Ball should have raised any defense to his underlying claim in the arbitration. Finding no abuse of discretion, we affirm confirmation of the fee award. *Candrian*, 240 Ariz. at 135, ¶ 7 (citing *Atreus*, 229 Ariz. at 506, ¶ 13).

## II. The Firm is not entitled to an attorneys' fees award for time spent seeking to confirm the arbitration award.

¶21 Ball also challenges the attorneys' fees award, arguing that the Firm represented itself in the confirmation proceedings. In response, the Firm argues that attorneys' fees in arbitration award confirmation proceedings are permissible and that because professional corporations in Arizona must be represented by counsel, the superior court did not err in awarding the Firm attorneys' fees for work performed by McGill on behalf of the Firm. We review an attorneys' fees award for abuse of discretion. *Candrian*, 240 Ariz. at 138, ¶ 21 (citing *Motzer v. Escalante*, 228 Ariz. 295, 296, ¶ 4 (App. 2011)).

¶22 Under Arizona law, a firm that represents *itself* cannot recover attorneys' fees. *See Munger Chadwick, P.L.C. v. Farwest Dev. & Constr. of the Sw., LLC*, 235 Ariz. 125, 126-28, ¶¶ 5-13 (App. 2014). But a party engages in self-representation when acting "*only* for himself." *See Hunt Inv. Co. v. Eliot*, 154 Ariz. 357, 363 (App. 1987) (holding an attorney could recover fees when the attorney represented an investment partnership that could not represent itself but in which the attorney owned a majority interest because he was acting for the benefit of others and himself) (citing *Connor v. Cal-Az Props., Inc.*, 137 Ariz. 53 (App. 1983)). No Arizona case has extended the reasoning from *Eliot* to law firms regardless of their legal form (partnership, limited partnership, personal corporation, etc.).

¶23 *Munger*'s reasoning is consistent with Arizona law. To recover attorneys' fees, a party must have incurred fees. *See Lisa v. Strom*, 183 Ariz. 415, 420 (App. 1995) ("Attorney's fees are meant to make a party whole for costs incurred for an attorney's services."). A party does not incur attorneys' fees unless there is (1) an attorney-client relationship and (2) a client has a genuine obligation to pay its attorney. *Lisa*, 183 Ariz. at 419 (citing *Swanson & Setzke, Chtd. v. Henning*, 774 P.2d 909, 912-13 (Idaho Ct. App. 1989)); *Connor*, 137 Ariz. at 56. And a firm is not entitled to recover

fees for an attorney working at a firm whether the attorney performed the work as part of the attorney's obligations to the firm or did so on the attorney's own time, such as in the attorney's spare time. *Munger Chadwick*, 235 Ariz. at 128, ¶¶ 10-11.

**¶24**     Here, the superior court found that McGill did not file a lawsuit in his capacity but rather on behalf of the Firm. The record supports the court's finding. McGill's declaration supporting the Firm's application for attorneys' fees stated that he was counsel representing the Firm. Because the Firm may not recover for McGill's fees in representing it, we vacate the attorneys' fees award as an abuse of discretion.

## CONCLUSION

**¶25**     We affirm the superior court's confirmation of the arbitration award and vacate the attorneys' fees award. We deny the Firm's request for appellate attorneys' fees. We award costs to McGill upon compliance with Arizona Rule of Civil Appellate Procedure 21. *See* A.R.S. § 12-341.

